**Maria TEJADA, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.**

**Docket No. 98–6056.**

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1998.

Decided Feb. 10, 1999.

Christopher James Bowes, Center for Disability Advocacy Rights, Inc., New York, N.Y. (Jill Ann Boskey, on the brief), for Plaintiff–Appellant.

Susan D. Baird, Assistant United States Attorney, Southern District of New York, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before: CALABRESI and STRAUB, Circuit Judges, and TSOUCALAS, Judge.*

TSOUCALAS, Judge:

Maria Tejada appeals from the judgment entered in the United States District Court for the Southern District of New York (Sidney H. Stein, *District Judge,* adopting the Report and Recommendation of Andrew J. Peck, *Magistrate Judge*), granting defendant's motion for judgment on the pleadings and upholding a final determination by the Commissioner of Social Security ("Commissioner") denying Tejada's application for Supplemental Security Income ("SSI") disability benefits. *See Tejada v. Callahan,* 993 F.Supp. 193 (S.D.N.Y.1998). For the reasons discussed below, we vacate and remand for further proceedings in accordance with this opinion.

## BACKGROUND

Plaintiff–Appellant Maria Tejada was born in the Dominican Republic on October 10, 1935, and came to the United States in September 1988. The record shows that she is unable to communicate in English, that she can speak but cannot read or write Spanish, and that she has never attended school. Tejada's last job, which she held from 1990–1992, was as an assembly worker on a car parts assembly line. Tejada's position required her to stand for most of her eight-hour work day, to perform frequent bending and reaching, and occasionally to lift up to ten pounds. Appellant stopped working on December 5, 1992, because of her disability and because her daughter was in a coma.

The record below reveals that at the time of her initial application, Tejada had multiple health problems, including diabetes, from which she suffered for over 15 years. Tejada's diabetes was unpredictable and difficult to manage; in fact, she was once taken to the hospital in an ambulance because her blood sugar dropped to alarming levels. Her precarious situation forced the William Ryan Community Health Center, one of Tejada's treating facilities, to adjusted her insulin dosage several times over a three-year period

(1991–1994). The Ryan Center diagnosed Tejada as having diabetes mellitus with peripheral neuropathy in November 1993. A podiatrist confirmed the diagnosis of diabetes mellitus in October 1994. In late 1994, the Ryan Center discontinued Tejada's insulin treatment and replaced it with Micronase, a medication used in the treatment of non-insulin dependent diabetes mellitus. Also, in late 1994, another doctor of the Ryan Center diagnosed Tejada with diabetic neuropathy.

Tejada's other disabling complaints included weakness, dizziness, fatigue, stomach bloating, pains in her chest, increased size of her thyroid, arthritis pain in her back, knees, hands and shoulders, hypertension, worsening vision, depression, and leg edema. Her frequent headaches and dizzy spells required her to lie down for several hours at a time. The cramping, pain, and swelling in her legs required her to keep her legs in water for at least one hour per day and to keep them elevated 2–3 hours per day. Pain relievers afforded no relief. On May 3, 1994, Tejada saw a podiatrist who diagnosed osteoarthritis.

Tejada applied for SSI benefits on August 5, 1993, six months after she stopped working, stating that she had been unable to work because of her diabetes, which caused dizziness, and her high blood pressure. The Commissioner denied her initial application, and Tejada requested a hearing for reconsideration stating "I am still disabled and unable to work due to [high blood pressure], diabetes and also depression problems." The hearing took place on December 6, 1994. Tejada appeared at the hearing with her daughter and was represented by a law graduate. The Administrative Law Judge ("ALJ") agreed to hold the record open for two more weeks after the hearing, for the submission of additional medical evidence. Tejada's representative submitted a letter of argument as well as sixty-four pages of additional medical evidence from appellant's treating clinic.

The ALJ found that Tejada has "severe hypertension, diabetes mellitus, incipient cat-

---

* The Honorable Nicholas Tsoucalas, Senior Judge of the United States Court of International Trade, sitting by designation.

aracts, internal hemorrhoids and arthralgia." Nevertheless, on February 11, 1995, the ALJ denied appellant's SSI application. Tejada requested review before the Commissioner's Appeals Council, which denied review on March 1, 1996. The decision of the ALJ, therefore, became the final decision of the Commissioner.

On May 23, 1996, Tejada commenced a *pro se* action in district court. After the Commissioner filed an answer along with a certified transcript of the hearing, Tejada moved for judgment on the pleadings to reverse the Commissioner's denial of benefits and to remand the action for further administrative proceedings. The Commissioner cross-moved for judgment on the pleadings and for dismissal of the complaint.

Magistrate Judge Peck recommended that the Commissioner's motion be granted, after determining that there was substantial evidence to support the ALJ's decision. On February 2, 1998, Judge Stein affirmed the Report and Recommendation by summary order and entered judgment for the Commissioner.[1] Tejada filed this appeal on March 11, 1998.

Tejada argues that the ALJ erred in concluding that she was able to return to her past employment. Specifically, Tejada asserts that the ALJ's description of the requirements of her former employment was ambiguous and was not supported by substantial evidence. Tejada further alleges that the ALJ failed to consider most of the medical records she submitted.

## DISCUSSION

The Supplemental Security Income Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (1994). To qualify for SSI benefits,[2] the disability must be the result of an anatomical, physiological or psychological abnormality demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See id.* § 1382c(a)(3)(C) (1994).

■ When reviewing the Commissioner's denial of disability benefits, this Court's " 'focus is not so much on the district court's ruling as it is on the administrative ruling.' " *Schaal v. Apfel,* 134 F.3d 496, 500–01 (2d Cir.1998) (quoting *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991)). First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. *See Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (holding that the Court must first review the ALJ's decision for correct legal principles before applying the substantial evidence standard to uphold a finding of no disability); *see also Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) ("Failure to apply the correct legal standards is grounds for reversal.").

■ Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence. *See Townley,* 748 F.2d at 112 ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding."). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

---

1. Tejada, through counsel, informed the district court that she had been approved for disability benefits based on a subsequent SSI application filed April 16, 1996. However, this appeal concerns only Tejada's right to receive retroactive benefits from the date of her August 5, 1993 application, *see* 20 C.F.R. § 416.335 (1998) (providing that benefits are not payable for the time period before an application is filed), through the day before Tejada's subsequent SSI application, April 15, 1996, *see Dixon v. Shalala,* 54 F.3d 1019, 1039 (2d Cir.1995) ("[I]f a claim is before the court on judicial review, the application remains in effect."). The grounds for approval of plaintiff-appellant's subsequent application are unclear and have no bearing on the issues raised in this appeal.

2. In addition to being afflicted with a disability as recognized by the statute, eligibility for benefits requires that the applicant have limited financial resources not exceeding an amount defined by statute. *See* 42 U.S.C. § 1382(a). There is no dispute in this case as to Tejada's financial eligibility for SSI.

adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The Court carefully considers the whole record, examining evidence from both sides "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Quinones v. Chater,* 117 F.3d 29, 33 (2d Cir.1997) (quoting *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988)).

This Court has described the five-step process through which the Commissioner makes a determination as follows: First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity[3] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform. *See Balsamo v. Chater,* 142 F.3d 75, 79–80 (2d.Cir.1998).

Here, the ALJ found that Tejada was not performing substantial gainful activity and that her condition constituted a severe impairment (although not one listed, or equivalent to the impairments listed, in Appendix 1 of the regulations). Tejada's claim therefore survived the first two steps of the Commissioner's inquiry. However, the ALJ concluded that Tejada had "the residual functional capacity to perform work-related activities except for work involving more than 20 pounds." Further, the ALJ determined that since Tejada's past relevant work did not require her to lift more than 20 pounds, she was not precluded from returning to her prior job. Although the ALJ had previously concluded that Tejada's job involved her standing a minimum of six hours in an eight-hour workday, he did not address whether her leg edema, arthralgia, diabetes mellitus, or severe hypertension would prevent her from performing a job that requires such exertion. The issue in this case is whether the Commissioner's determination-that Tejada, despite her impairments, had the residual functional capacity to perform the work-related activities (except for work that involved lifting more than 20 pounds) of her old job in a metal factory assembly line-was supported by substantial evidence.

At the outset, we are troubled by the ALJ's failure to develop the record in this case. By statute, the ALJ was required to develop Tejada's complete medical history for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(G) (1994); 20 C.F.R. § 416.912(d)(2) (1998). Moreover, "[i]t is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must ... affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996) (quoting *Echevarria v. Secretary of HHS,* 685 F.2d 751, 755 (2d Cir.1982)). In this case, we question the decision of the ALJ not to develop the record further concerning Tejada's arthritis or her

---

3. The Social Security Administration's regulations define residual functional capacity as follows: "Your impairments(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a); *see also Schaal,* 134 F.3d at 501 n. 4 (quoting § 416.945(a)).

depression, particularly since the ALJ himself referred to the fact that Tejada was under treatment for both conditions. Further, although the ALJ noted 15 visits to medical facilities in a two year period, he merely labeled these visits as "infrequent" instead of identifying what treatment was received and the purpose of these visits (there is a dispute as to how many times Tejada received medical treatment for her ailments—the record shows up to 18 documented visits in a one year period). In any event, we need not decide whether the ALJ failed to develop a complete record because, as we discuss below, we find that the record, as developed by the ALJ, does not support the ALJ's findings by substantial evidence that Tejada could perform her past relevant work.

Taken all together, the facts in the record before us do not support the ALJ's determination that Tejada could return to her prior employment. And, on these facts, we conclude that Tejada has met her burden of showing that she does not have the residual functional capacity to perform the work of her former job-that is, that she has satisfied the fourth requirement of the five-part test.

We reach this conclusion despite the dispute between the parties as to what evidence the ALJ considered and the relevance of that evidence to this issue. In particular, following argument, counsel for the appellant brought to our attention an apparent discrepancy between the Regulations in effect at the time the ALJ rendered his decision and the Programs Operations Manual System ("POMS") with respect to the utility of a podiatrist's report. The Commissioner argues that 20 C.F.R. § 416.913 excludes podiatrists from serving as "acceptable medical sources" upon which the ALJ may rely in reaching a conclusion. Yet, in contrast to the Regulations, the appellant points out POMS § DI 22505.003 specifically includes podiatrists as acceptable medical sources "for impairment(s) of the foot, or foot and ankle, as delineated in the State licensure." § DI 22505.003. In New York, podiatrists may treat conditions of the foot. See N.Y. Educ. L. § 7001(1) (McKinney Supp.1999) (defining podiatry as "diagnosing, treating, operating and prescribing for any disease, injury, deformity or other condition of the foot, and

may include performing physical evaluations in conjunction with the provision of podiatric treatment."). Thus, while the Regulations prohibit the use of a podiatrist's report as an "acceptable medical source," the POMS would not prevent the use of such a report in a state such as New York. Indeed, the Social Security Administration, recognizing this discrepancy, has recently proposed amendments to 42 C.F.R. § 416.913 to allow podiatrists to serve as "acceptable medical source[s]." See Notice of Proposed Rule, 63 Fed.Reg. 54, 417, 54, 418 (1998) (noting that podiatrists "are currently included in our operating instructions as acceptable medical sources for purposes of establishing the existence of a medically determinable impairment of the foot, or foot and ankle"). Accordingly, the appellant urges us to give controlling weight to the podiatrist's report based on the POMS.

■ We recognize that the POMS guidelines "ha[ve] no legal force, and [they] do[ ] not bind the [Commissioner]." *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). And, ordinarily, where the POMS are inconsistent with the statute, we will not apply them. *See, e.g., Bubnis v. Apfel,* 150 F.3d 177, 181 (2d Cir.1998). However, in this case, we cannot be sure whether the ALJ applied the Regulations or the POMS to his determination of the appellant's claim. Because of this ambiguity, we agree with the appellant that the circumstances of this case warrant our attaching some weight-although not controlling weight—to the podiatrist's report.

Here, the record shows that Tejada suffered from leg edema that demanded that she elevate her legs a few hours a day pursuant to a physician's advice. Moreover, although the record does not indicate whether the ALJ considered the podiatrist's report, we give some weight to the podiatrist's diagnosis that plaintiff suffers from osteoarthritis and peripheral neuropathy of the feet. In light of this evidence, the ALJ's determination that Tejada was able to continue her past employment, which required standing for prolonged periods of time, is not supported by substantial evidence.

The record reveals that the ALJ had discredited Tejada's testimony concerning certain aspects of her alleged disability. We are

not disturbing these findings. *See, e.g., Pascariello v. Heckler,* 621 F.Supp. 1032, 1036 (S.D.N.Y.1985) (noting that after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment). Nonetheless, we must reverse on the grounds that the ALJ overlooked objective medical evidence documenting Tejada's leg edema and her arthritis. His determination that Tejada can return to her past employment is therefore both based on legal error and is not supported by substantial evidence.

For the reasons set forth above, the judgment of the district court is hereby vacated and the case is remanded to the district court with instructions that the matter be remanded to the Commissioner for a rehearing and determination confined to step five of the sequential analysis. If the Commissioner is unable to find other work under the Medical–Vocational Guidelines which the claimant could perform, the Commissioner is directed to calculate and dispense SSI benefits. Since Ms. Tejada's application for benefits has been pending for more than five years, we urge the Commissioner to expedite the proceedings on remand.