**Jose CRUZ, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of the Social Security Administration, Defendant.**

**No. Civ.A. CV–96–5357(DGT).**

United States District Court,
E.D. New York.

March 10, 1999.

Carolyn A. Kubitschek, Lanser & Kubitschek, New York City, for Plaintiff.

Zachary W. Carter, U.S. Atty's Office, Civil Division, Brooklyn, NY, by Rosanne M. Harvey, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1994 & Supp. 1996), plaintiff, Jose Cruz, moves for the award of attorney's fees in relation to his successful appeal of the Social Security Administration's decision denying Mr. Cruz Supplemental Security Income benefits. Because the Commissioner's position

opposing remand was not substantially justified by the evidence in the record, the motion is granted. However, because some of the fees requested are excessive, the government's request for reduction is also granted.

## Background

Plaintiff, Jose Cruz, filed an application for Supplemental Security Income ("SSI") benefits in September of 1994. Following denial of the application both initially and on reconsideration, the case was considered by Administrative Law Judge ("ALJ") Wallace Tannenbaum *de novo*. On April 2, 1996, after a hearing at which Cruz appeared pro se, the ALJ determined that Cruz was not disabled. On October 16, 1996, Cruz's request for review was denied by the Appeals Council, and on October 31, 1996, Cruz, having obtained counsel, filed a complaint in the Eastern District of New York and obtained a remand on August 20, 1997. *See Cruz v. Callahan, Acting Commissioner Social Security Administration,* No. 96 Civ. 5357 (E.D.N.Y. Aug 20, 1997).

Cruz's claim of disability during the administrative process was based on primarily physical disabilities. Cruz, a high school graduate fluent in English, suffered from back pain, chest pain, joint pain, partial numbness, and epileptic seizures, symptoms at least partially the result of a motor vehicle accident in 1981. He was also under treatment for alcoholism. Cruz complained that the pain made it impossible for him to work. The ALJ found Cruz's testimony as to pain not fully credible in light of the record. He further found, considering both exertional and non-exertional limitations, that Cruz had the capacity to perform sedentary work, limited only by his inability to work around heights, moving machinery and operating motor vehicles.[1] Finally, the ALJ noted in

---

1. Various doctor's reports had indicated that there were slight limitations on Cruz's capacity to stand, stoop, crawl, lift more than 50 lbs, etc. No report in the record indicated a more

severe disability. The record also indicated that both the epileptic seizures and alcoholism were under control—the seizures through

his decision that Cruz denied receiving psychiatric treatment.

The record before the ALJ contained numerous evaluations of Cruz's mental health; all but one were focused on his alcoholism. In only that one case did Cruz assert he was under psychiatric treatment. He denied it numerous times. The record included a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique (from February 1995). The former evaluated Cruz as "not significantly limited" in any of the categories in which he was tested, the latter recommended "slight" restrictions as a result of Cruz's alcoholism. In a 1993 patient history from Woodhull Medical and Mental Health Center ("Woodhull"), Cruz denied having a history of psychiatric problems. In a history taken as part of an alcoholism treatment program at Kings County Hospital in 1993, Cruz admitted to one suicide attempt (in the same year as his accident) and to an instance of assaultive ideation. Finally, when examined in 1994 by two doctors from Kings–M.D. Medical services, where he had gone "because sometimes I feel dizzy," Rec. at 140, he told one doctor, Dr. Marcuzzo, that he had no history of psychiatric treatment, suicide, or depression, but that he "used to drink a lot." *Id.* Dr. Marcuzzo concluded that Cruz's "allegations" were in keeping with the doctor's "findings." However, as related in a report dated the same day as Dr. Marcuzzo's (October 18, 1994), Cruz told another doctor at Kings–M.D., Dr. Grossman, that he had a 12 year history of psychiatric disorder, had attempted suicide, and was presently being treated by Dr. Medkovich, a psychiatrist at Woodhull. Dr. Grossman concluded that Cruz might be mildly impaired. He diagnosed a history of psychiatric disorder, made a psychiatric referral, and listed Cruz's prognosis as guarded.

The ALJ noted in his decision that Cruz denied receiving psychiatric treatment in a 1994 evaluation. The ALJ did not address the other 1994 evaluation. He had not

medication, and the alcoholism through fre-

asked Cruz specifically about a psychiatric disorder at his hearing, although he had enquired into what kind of treatment Cruz received at Woodhull, and whether there was anything that the ALJ should know. To the latter Cruz replied in the negative. To the former Cruz replied that he received medicines and a "physical checkup." Rec. at 33.

On his appeal to the district court, however, Cruz included with his motion a referral, dated May 21, 1997, from his treating psychiatrist, Dr. Holloway. That referral indicated that Cruz had been receiving regular psychiatric treatment from Dr. Holloway for the past eighteen months, that Cruz had severe depression, blindness in his right eye, and that, in conclusion, he could not work at all. The force of this new evidence resulted in a remand to the ALJ, pursuant to sentence six of 42 U.S.C. § 405(g) (1994). Subsequently, Cruz was assessed by the ALJ as having been disabled since August of 1994.

Presently, Cruz seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412(d).

### Discussion

#### (1)

■ Once a petitioner has successfully challenged government agency action in court, he or she is entitled to recover the costs of litigation so long as the "the position of the United States" was not "substantially justified" and "special circumstances [do not] make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The "substantially justified" standard requires that the government's position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Generally, if the basis for remand is evidence which was not available prior to the district court action, the award of attorney's fees is inappropriate because

quent counseling.

the Commissioner's decision was reasonable with regard to the evidence he had before him. Thus, a remand granted under sentence six of 42 U.S.C. § 405(g), as occurred in this case, is generally not grounds for an award of fees.

■ However, remand under sentence six of § 405(g) is not equivalent to a finding that the ALJ's decision was supported by substantial evidence, nor does it imply that, absent the new evidence which served as the basis for remand, the government's position was substantially justified. In this case, while the new evidence provided by the plaintiff upon appeal was overwhelmingly convincing of the need for remand, it was not the only possible basis. The ALJ has a responsibility to develop the record at the administrative level. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999). When a plaintiff appears pro se, that responsibility is even more pronounced. *See Echevarria v. Secretary of Health and Human Serv.,* 685 F.2d 751, 755 (2d Cir.1982). If, in failing to fulfill that duty, the ALJ leaves significant gaps in the record, a district court may remand for further development of the record pursuant to sentence four of § 405(g). *See id.* at 756–57; 42 U.S.C. § 405(g).

■ In the present case, while indications of psychiatric disorder were hidden within a conflicting record, it was nevertheless the ALJ's responsibility to assess that evidence and realize that there was an important gap in the record as it stood— namely, the possible history of psychiatric treatment. Although the claimant denied any history of psychiatric treatment, that is hardly surprising. Persons often deny receiving treatment from a psychiatrist. But, as the record before the ALJ contained both the location of the treatment, as well as the name of a physician, i.e., Dr. Medkovich, it would have been eminently possible to ascertain whether or not the indicated twelve year history of psychiatric disorder was, in fact, a reality, and whether or not it dictated a finding of disability. Having failed to complete the record, as

required under the statute and the law of this circuit, the Commissioner was not justified in opposing remand. The attorney who finally obtained concrete evidence of the disability and eventually won an award deserves reimbursement by the government.

As was noted in the brief motion hearing, the ALJ cannot be faulted for not realizing during the hearing that plaintiff suffered severe depression. However, in either missing or ignoring evidence of a history of psychiatric treatment, and in consequently failing to make any directed effort to ascertain the validity of that evidence, the ALJ negated the ability of the government to establish that its position was "substantially justified." In light of conflicting evidence regarding a history of psychiatric treatment, and in the absence of any directed inquiry into the conflict, a reasonable person could not have regarded the record as complete. Therefore, plaintiff is entitled to the award of reasonable attorney's fees under the EAJA.

**(2)**

Plaintiff's entitlement to costs under the EAJA, does not, of course, entitle him (or his counsel) to unlimited largess from the government. In fact, the Supreme Court has determined that the district court should exercise its discretion in awarding fees, and establish what amount of time was "reasonable" for the case in question. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983).

In his motion for fees, plaintiff requested that the counsel of record and two other associates employed by the firm be compensated at a rate of $139.50 and that "legal assistants and law interns" who assisted in the preparation of his case be compensated at a rate of $75.00 per hour. The government opposes the amount of costs and fees requested, a total of $10,363.22, on the grounds that the requested rates are too high, the billed hours are too numerous, and there are mistakes in the billing records.

■ The rate for attorney's fees under the EAJA is established by 28 U.S.C. § 2412(d)(2)(A) (Supp.1996). That section, as amended in 1996, establishes that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.*[2] Plaintiff, however, depends on the $75.00 per hour rate originally established by the 1981 version of the EAJA, and then adjusts that for cost of living increases to reach a present ceiling of $139.50 per hour.[3] The government's position that cost of living increases should be added only to and since the rate established in 1996 is clearly correct, and thus the court may not award fees for attorneys at a rate greater than $129.65.[4] In the present case, because the upward adjustment is made as a result of the increased cost of living, and not because of any special skills, the rate should apply to all counsel.

■ The government further opposes plaintiff's hourly billing rates for non-lawyer assistants. Plaintiff has requested rates of $75.00 per hour for both paralegals and student interns. The government, while not opposing that the assistants be paid, proposes $70.00 per hour for paralegals and $50.00 per hour for the student interns. As the government has provided no basis for their lower calculation of fees, and seeing that $75.00 per hour has been determined to be a reasonable "market rate" for paralegals in New York City in other cases, there is no reason to adjust the requested $75.00 per hour fee for the paralegal work. *See e.g.,*

*Siconolfi v. Apfel,* No. 97 Civ. 4694, 1998 WL 827433, at * 3 (E.D.N.Y. Nov.23, 1998); *Loper v. New York City Police Dept.,* 853 F.Supp. 716, 720 (S.D.N.Y.1994). Furthermore, although the government has requested that student interns be paid at the rate of $50.00 per hour, there is no evidence that the interns' work deserves or requires a lower rate of remuneration. *See Ellis v. Apfel,* No. 97 Civ. 1682, 1998 WL 480861, at *2 (N.D.N.Y. Aug.14, 1998) (equating student fees with paralegal fees); *Luciano v. Olsten Corporation,* 925 F.Supp. 956, 962 (E.D.N.Y.1996) (holding that, in civil rights case, law student clerks should be compensated at same rate as paralegals). Therefore, law student interns will be awarded the same $75.00 per hour rate as paralegals.

■ In addition to opposing the requested rates, the government also opposes the number of hours billed by counsel in this case as unreasonable. In awarding fees, the district court has the discretion and the duty to determine what a reasonable number of hours was for the case at hand. *Hensley v. Eckerhart,* 461 U.S. 424, 432, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983). In the case at hand, plaintiff seeks reimbursement for a total of 116.35 hours of work by counsel and support staff for what was, apart from the possible difficulties inherent to working with depressed claimants, a straightforward disability case. Furthermore, the only justification plaintiff's counsel has provided for the number of hours is an un-annotated set of billing records which, while they meet the standard required to award fees, do not instill confidence in their precision. This

---

2. The amended statute is "applicable to civil actions and adversary adjudications commenced on or after March 29, 1996." *See* Act of March 29, 1996, Pub.L. 104–121 § 233, 110 Stat 863.

3. Plaintiff only alleges cost of living increases as a basis for a higher hourly rate of pay. There is nothing in this case to suggest that special skills were needed that would justify exceeding the statutory ceiling.

4. This is the figure provided by the government as representing $125.00 adjusted for cost of living increases between March, 1996 and February, 1998 (the same span asserted by plaintiff). Because plaintiff has not disputed this figure in any reply brief, this figure is accepted.

lack of confidence is exacerbated by inconsistencies in the amounts at which counsel has billed attorney time (rates vary from $139.50 to $160.00 to $250.00), possible redundant billing, and large numbers of hours devoted to "review of the record."

Courts in this jurisdiction have commonly found that Social Security disability benefits cases such as this one require twenty to forty hours of time. *See, e.g., DiGennaro v. Bowen,* 666 F.Supp. 426, 433 (E.D.N.Y.1987) (citing cases). As mentioned above, this case may have required extra time because of the claimant's disability. On the other hand, counsel's expertise in the subject would, one would think, compensate for the needs of a difficult client. Nevertheless, as the court will not compensate counsel for her expertise, neither will it penalize her. *See Lagana v. Secretary of Dep't of Health and Human Serv.,* No. 90 Civ. 2638, 1992 WL 179215, at *4 (E.D.N.Y. July 13, 1992).

The government's specific complaints of redundant billing are negligible, they require a deduction of less than ten hours of time. However, the claim of unreasonableness of the number of hours is valid and, accordingly, attorney hours which total at 16.3 hours, are reduced to 10 hours. Furthermore, hours expended by non-attorney assistants, 100 hours, are reduced to 50 hours. This renders a total time spent of 60 hours, high but not unreasonable for a benefits case with a possibly difficult client.

### Conclusion

Because the government's position in this case was not substantially justified, plaintiff is awarded reasonable fees under 28 U.S.C. § 2412(d). However, in that the fees requested by plaintiff are unreasonable, the amount of fees granted is as follows: for ten (10) hours of work by attorneys at an hourly rate of $129.65, the court awards $1,296.50; for fifty (50) hours of work by non-attorney support at an hourly rate of $75.00, the court awards

$3,750.00. Thus, plaintiff is awarded a total of $5,046.00 in attorney's fees.

SO ORDERED: