**James R. JORDAN, Sr., Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 00–CV–6227L.**

United States District Court,
W.D. New York.

July 11, 2001.

Alfred P. Kremer, Rochester, NY, for Plaintiff.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final deter-

mination of the Commissioner of Social Security ("the Commissioner") that plaintiff was not disabled under the Social Security Act, and therefore, was not entitled to disability benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons outlined below, the Court grants the Commissioner's motion and denies plaintiff's motion.

## PROCEDURAL BACKGROUND

Plaintiff James Jordan applied for disability benefits in October 1994. (T. 147–150).[1] The basis for the application was that Jordan was unable to work because he suffered from back pain. (T. 154). The Social Security Administration denied the application initially (T. 152–154) and on reconsideration (T. 167–169). At a hearing on January 24, 1996 before an administrative law judge ("ALJ"), Jordan further alleged that he suffered from a heart murmur, asthma, and bronchitis. (T. 34). In his decision dated April 26, 1996, the ALJ found that Jordan was ineligible for benefits. (T. 13–23). The Appeals Council affirmed the ALJ's decision on December 17, 1997 (T. 6–7), and Jordan filed a complaint in this Court on February 11, 1998. *Jordan v. Apfel,* 98–CV–6048. By order entered September 15, 1998, the parties stipulated to a reversal and remand to the Commissioner for further administrative proceedings. (T. 401–403). On January 7, 1999, the same ALJ held a second hearing (T. 404), and on February 17, 1999, he issued a second decision again denying benefits (T. 389–399). The determination became the final decision of the Commissioner on March 28, 2000 when the Appeals Council denied plaintiff's request for review. (T. 381–382). The instant action

to review the Commissioner's final decision followed.

## FACTUAL BACKGROUND

Jordan was born on February 28, 1947. (T. 147). He suffered a back injury on October 16, 1991, while lifting a box at work. (T. 222, 261–262). He was subsequently treated at Highland Hospital, and referred to Dr. Jeffery Harp, who the parties agree is Jordan's treating physician. (T. 217–220). Jordan returned to work, while undergoing physical therapy, but he ceased working in November 1992. (T. 43–44). From April until October 1994, Jordan ran a small grocery store. (T. 177, 390). He has not engaged in substantial gainful activity since October 21, 1994. (T. 398).

Jordan has a high school education and has taken two years of business classes. (T. 76–78, 468). He has experience working as a service representative (T. 73), light industrial worker, office cleaner (T. 207), minister (T. 71–72, 446–447), and grocery store operator (T. 50–51, 448). Based upon the testimony of a vocational expert and the medical records, the ALJ found that Jordan possessed skills in communication, logical thinking, decision-making, writing, computers, and the use of tools sufficient to enable him to perform substantial gainful work notwithstanding the impairments he alleges. (T. 397; *see also* T. 466–468).

## GENERAL STANDARDS

A. *Standard of Review*

The first issue to be determined is whether the Commissioner applied the correct legal standard. *Tejada v. Apfel,* 167 F.3d 770, 773 (2d. Cir.1999); *see also*

---

1. "T. ___" refers to the page of the transcript of the Record filed by the Commissioner with his Answer.

*Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (holding that the court must first review the ALJ's decision for correct legal principles before applying the substantial evidence standard to uphold a finding of no disability); *see also Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) ("[f]ailure to apply the correct legal standards is grounds for reversal").

The only other issue to be determined is whether the Commissioner's conclusions are supported by substantial evidence. *See Townley,* 748 F.2d at 112 ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding"). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

B. *The Standard for Finding a Disability*

A person is "disabled" under the Act and therefore entitled to benefits, when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of an anatomical, physiological or psychological abnormality demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.; see also Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

The Second Circuit has described the five-step process through which the Commissioner makes a determination as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether,

despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada,* 167 F.3d at 773.

Here, the ALJ found that plaintiff was not performing substantial gainful activity (T. 398), and that his back pain, heart murmur, asthma, and bronchitis, viewed together, constituted severe impairments, but that none of them alone was severe. (T. 391). The ALJ proceeded to find that none of plaintiff's impairments were listed in, or medically equal to, those impairments listed in Appendix 1, subpart P, Regulations No. 4. (T. 398). The ALJ then found that Jordan could no longer perform his past relevant work as a stockman, office cleaner, light industrial worker, production supervisor, or self-employed grocer. (T. 398). Plaintiff's claim therefore survived the first four steps of the Commissioner's inquiry. However, following an individualized functional assessment, the ALJ determined that Jordan retained the functional capacity to perform certain sedentary work, such as an industrial order clerk, a procurement clerk, or a bookkeeper. (T. 399). The issue in this case is whether substantial evidence supports the Commissioner's determination that plaintiff, despite his impairments, had the residual functional capacity to perform the work-related activities of certain jobs in the local and national economy.

## DISCUSSION

The Commissioner's motion, under FED. R. CIV. P. 12(c) for judgment on the pleadings, is based primarily on the argument that because plaintiff's alleged impairments did not prevent him from engaging in substantial, gainful activity, the decision that plaintiff is not disabled is supported by substantial evidence and should be affirmed under 42 U.S.C. § 405(g). The Commissioner concedes that Jordan may be unable to perform his past relevant work, but maintains instead that the ALJ correctly determined that plaintiff had the residual functional capacity to perform certain sedentary work.

In plaintiff's motion, also under FED. R. CIV. P. 12(c), plaintiff argues that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence. Plaintiff contends that he is now totally disabled as a result of back pain, bronchitis, asthma, and mitro-valve prolapse. He further maintains, *inter alia,* that the ALJ: (1) failed to give the proper weight to a treating physician's opinion regarding plaintiff's disability; (2) failed to evaluate plaintiff's pain; (3) improperly assessed plaintiff's credibility; and (4) misstated facts in hypothetical scenarios posed to a vocational expert. Plaintiff seeks a reversal of the ALJ's decision, or, in the alternative, a remand for a third hearing before a different ALJ. Reduced to its simplest form, it is essentially Jordan's argument that while he may not have been totally disabled between 1991 and 1994, his condition deteriorated to the point of total disability in late 1995 or 1996.

In my judgment, the ALJ's decision that Jordan is not disabled and has not been precluded from performing sedentary work is supported by substantial evidence. The ALJ's decision is thorough and treats all of the relevant factors with care. In assessing Jordan's functional capacity, a number of physicians have determined that Jordan is able to do some degree of lifting, standing, and sitting. (T. 228–229, 112, 239–240, 261–264, 276–277, 129, 300, 525–526). Moreover, even in Dr. Harp's most recent diagnosis on Novem-

ber 19, 1998, he opined that Jordan was able to lift 10–20 lbs., sit for 6 hours, stand for 2 hours, and walk for 1 hour. (T. 525–526). Based upon this information, the vocational expert testified to the existence of three positions in both the national and regional economy (namely, an industrial order clerk, a procurement clerk, and a bookkeeper) that Jordan can perform. (T. 472, 399). I further note that plaintiff's counsel concedes that he did not voice any objection during the hearing itself with respect to the principal conduct now claimed as improper or erroneous.

■ Plaintiff argues that the ALJ ignored Dr. Harp's diagnosis that Jordan has an "industrial total disability" (T. 371) or a "permanent total disability." (T. 372, 376, 515–516). However, on this point, Dr. Harp characterizes Jordan as suffering from a so-called "permanent disability" because he is "completely unable to perform the functions related *to his job at the time of his injury,* which included frequent heavy lifting, bending, and stooping." (T. 321; *emphasis added* ). Dr. Harp's limited definition of disability, of course, fails to take into consideration a necessary element of a disability determination under the relevant statute and regulations, *i.e.,* whether Jordan could "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Moreover, the decision whether the claimant is *disabled* is expressly reserved for the Commissioner, and a treating source's opinion of disability is only entitled to some weight. *See* 20 C.F.R. § 404.1527(e)(1).

More importantly, Dr. Harp himself admitted that Jordan could perform tasks that were not strenuous on his back. (T. 321). Contrary to plaintiff's position, the ALJ stated that he gave "great weight" to Dr. Harp's opinion about plaintiff's limitations. (T. 396). It was based at least in part upon that opinion that the ALJ found that Jordan "cannot return to his past relevant work as a stockman, office cleaner, light industrial worker, production supervisor or grocer under these limitations." (T. 396, 398).

Through the evidence contained in the record, the Commissioner has satisfied his burden of showing the "existence of alternative substantial gainful employment which exists in the national economy and which the claimant can perform, given his or her physical and mental capabilities, age, education, experience, and training." *Meyer v. Schweiker,* 549 F.Supp. 1242, 1245 (W.D.N.Y.1982), (citing *Parker v. Harris,* 626 F.2d 225); *see also* 20 C.F.R. § 404.1561. The ALJ considered Jordan's physical capabilities, age, education, and work experience in concluding that Jordan was "not disabled." (T. 399). The ALJ also used these criteria in his questioning of both the plaintiff and the vocational expert during the hearing. The ALJ carefully ascertained Jordan's educational background and work experience. (*See* T. 460–464). By taking these factors into account, the ALJ's finding that Jordan was capable of performing other work is supported by substantial evidence.

Plaintiff is incorrect in his assertion that the ALJ's decision made no reference to Jordan's claims of pain. The ALJ specifically addressed the location, severity, and duration of the pain that Jordan claims. (T. 394–395).

■ Plaintiff next contends that the ALJ unfairly discredited Jordan's testimony about his alleged disability. Such a finding, however, need not necessarily be disturbed. *See Tejada,* 167 F.3d at 775–776; *Pascariello v. Heckler,* 621 F.Supp. 1032, 1036 (S.D.N.Y.1985) (noting that after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving con-

flicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment). Moreover, the contention that the ALJ found that Jordan "lied" about his condition overstates the ALJ's ruling. The ALJ legitimately noted that the claimant's testimony was inconsistent with the medical evidence before him. Jordan testified that he required naps 3–5 times each day, but no physician's report reaches that conclusion.[2]

 Plaintiff further challenges the hypothetical used by the ALJ in questioning the vocational expert because it unfairly created an inference of residual work capacity. Although the ALJ's hypothetical may not have been identical to the scenario presented in Dr. Harp's November 19, 1998 report, it was based on Dr. Harp's diagnosis. I realize that testimony of vocational experts is "only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Dumas v. Schweiker*, 712 F.2d at 1553–1554 (quoting *Aubeuf v. Schweiker*, 649 F.2d 107 (2d Cir.1981)). However, unlike *Dumas*, the instant case is not one where the vocational expert was called upon to "assume a particular physical capability on the part of the claimant . . .where there was no evidence to support the assumption underlying the hypothetical." *Id.* at 1554. Rather, the hypothetical was predicated upon Dr. Harp's diagnosis directly. (T. 525–526).

At oral argument and in a subsequent submission, plaintiff underscores his argument that the ALJ's decision fails to take into account Dr. Harp's most recent reports, especially his assessment dated November 19, 1998. This assertion is flawed,

however, because it ignores the fact that, in that report, Dr. Harp concluded that Jordan had the functional capacity to perform tasks consistent with sedentary work. (T. 525–526).

In sum, I find substantial evidence in the record to support the ALJ's determination. Therefore, the Commissioner's decision must be affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.# 3) is granted, and plaintiff's motion for judgment on the pleadings (Dkt.# 9) is denied. The complaint is, therefore, dismissed.

IT IS SO ORDERED.

---

**2.** The ALJ also noted that Jordan never reported to his physicians any incidents of falling when his leg "goes out." Although it appears that on one occasion Jordan reported one such incident to Dr. Dunn (*see* T. 330), such an isolated incident would not alter the result that plaintiff was able to perform certain sedentary work.