Jean MARKLE, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security,[1] Defendant.

No. 00–CV–6575L.

United States District Court, W.D. New York.

July 30, 2002.

---

1. Plaintiff's complaint names former Commissioner of Social Security Larry G. Massanari. Jo Anne B. Barnhart, the current Commissioner, is automatically substituted as defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Peter A. Gorton, Lachman & Gorton, Endicott, NY, for Plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., United States Attorney, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff, Jean Markle, was not disabled under the Social Security Act and therefore, was not entitled to benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons outlined below, the Court grants the Commissioner's motion and denies plaintiff's motion.

## PROCEDURAL POSTURE

Plaintiff, Jean Markle, applied for Social Security disability insurance benefits and Supplemental Security Income disability benefits in January 1997. (T. 32.) [2] Plaintiff alleged that she was unable to work because she suffered from pain on the left side of her neck and back. (T. 277.) In a decision dated March 4, 1999, the administrative law judge [hereinafter "ALJ"] found that plaintiff was ineligible for benefits. (T. 31–41.) This decision became the final decision of the Commissioner on November 17, 2000, when the Appeals Council denied plaintiff's request for review.

2. "T.___" refers to the page of the Administrative Record filed by the Commissioner with

(T. 7.) This action to review the Commissioner's decision followed.

Both plaintiff and the Commissioner now move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Plaintiff contends, *inter alia*, that the ALJ: (1) improperly assessed plaintiff's credibility; (2) improperly rejected a treating physician's opinion regarding plaintiff's residual functional capacity; and (3) improperly closed the administrative record. The Commissioner's decision that plaintiff is not disabled is supported by substantial evidence and should be affirmed under 42 U.S.C. § 405(g).

## GENERAL STANDARDS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court is limited to determining whether the Commissioner's conclusions are supported by substantial evidence. *See Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) ("It is not the function of a reviewing court to determine *de novo* whether a claimant was disabled"). The Commissioner's findings of fact, if supported by substantial evidence, are binding. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### B. Standard for Determining Disability

A person is "disabled" under the Act and therefore entitled to benefits, when

her answer.

she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of "an anatomical, physiological or psychological abnormalit[y][ ] demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that [s]he is not only unable to do h[er] previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

## DISCUSSION

Applying the usual five-step process for evaluating disability claims, see Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999) (discussing five-step process delineated in the relevant regulations); 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since November 15, 1995, (T. 32), and that plaintiff suffered from torticollis, or cervical dystonia,[3] a severe impairment,[4] (T. 40). Then, the ALJ found that this impairments did not meet or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (T. 40.) Proceeding to the fourth step, the ALJ determined that plaintiff had the residual functional capacity to return to her past relevant work as an LPN charge nurse. (T. 41.) Thus, the ALJ found that plaintiff was not disabled under the Social Security Act. (T. 41.) After review of the administrative record, I conclude that the ALJ's decision is supported by substantial evidence.

### A. The ALJ's Assessment of Plaintiff's Credibility

■ Plaintiff contends that the ALJ erred in failing to credit plaintiff's subjective complaints of pain. The ALJ found that plaintiff's testimony at the hearing regarding the severity and disabling nature of her pain was largely inconsistent with her daily activities and the medical evidence. In evaluating a claimant's subjective allegations, the ALJ considers various factors, including the claimant's daily activities, the frequency and intensity of pain, the type, dosage, effectiveness, and side effects of medication, and other treatment that relieves pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ specifically addressed these matters and, after reviewing the medical evidence in the record, was entitled to make a credibility determination regarding plaintiff's allegations of disabling pain. See Tejada v. Apfel, 167 F.3d 770, 775–776 (2d Cir.1999); Jordan v. Apfel, 192 F.Supp.2d 8, 13–14 (W.D.N.Y.2001) (noting that after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment).

---

**3.** "[A] contraction, often spasmodic, of the muscles of the neck, chiefly those supplied by the spinal accessory nerve; the head is drawn to one side and usually rotated so that the chin points to the other side." *Stedman's Medical Dictionary* 1463 (5th ed.1982).

**4.** The ALJ also found plaintiff suffered from a chronic adjustment disorder with depressed mood as well as a dependent personality disorder, (T. 311), but based on the analysis of examining physician Dr. Khan, determined that these were not severe impairments. (T. 312–14.) Plaintiff does not contest this determination.

The ALJ found that plaintiff's daily activities failed to support her alleged limitation of being able to stand continuously for only ten to twelve minutes. Plaintiff lived alone and was able to perform a wide range of daily activities including dressing, bathing, cooking light meals, washing dishes, and sweeping; all of which fail to support her alleged limitation. (T. 51, 64–65.)

The ALJ also found that plaintiff's testimony conflicted with evidence on the record. For example, plaintiff's statements regarding the alleged ineffectiveness of Botox[5] injections conflicted with plaintiff's treating physician, Dr. Richard Barbano's findings of "clearly increased" range of motion following injections. (T. 297, 301.) Likewise, plaintiff's assessment of her pain as moderate to severe on a rating scale of mild, moderate, or severe, (T. 56), conflicted with Dr. Barbano's statement that plaintiff's level of pain was moderate on a rating scale of mild, moderate, moderately severe, or severe, (T. 307). Moreover, plaintiff failed to follow treatment plans prescribed to alleviate her pain. For instance, plaintiff voluntarily terminated physical therapy, which she commenced in February 1996, in October 1996. (T. 37.) Plaintiff also failed to continue drug therapy which "helped best with her dystonia but also her anxiety," (T. 301), because "she does not like to take pills," (T. 302). In March 1998, Dr. Barbano noted plaintiff was "very resistant to both the diagnosis and treatment" of her condition. (T. 302.)

■ Based upon the foregoing, I find that the ALJ properly determined that plaintiff's subjective complaints were not credible to the disabling extent alleged.

### B. The Plaintiff's Treating Physician's Opinion

Plaintiff next contends that the ALJ failed to give proper weight to the opinions of her treating physician, Dr. Richard Barbano. Specifically, plaintiff contends that the ALJ erred in failing to adopt the more restrictive assessment of her residual functional capacity submitted by Dr. Barbano. The regulations promulgated by the Social Security Administration provide that a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2); *see Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000).

The ALJ found that plaintiff was able to lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour work day. Plaintiff was unable to climb, balance, stoop, kneel, crouch and crawl normally.

This conflicted with plaintiff's treating physician's more restrictive assessment. Dr. Barbano determined that plaintiff was able to lift and carry as well as climb, balance, stoop, kneel, crouch, and crawl to the same extent that the ALJ concluded, but found that plaintiff could only sit and/or stand for two hours in an eight-hour work day and walk three hours in an eight-hour work day. He also noted that plaintiff's eye/hand coordination would be affected by her condition because she experienced difficulty moving her neck.

The ALJ was correct in disregarding Dr. Barbano's assessment of plaintiff's residual functional capacity because it was

---

**5.** A toxin. *Stedman's Medical Dictionary* 188 (5th ed.1982). Injected to relieve pain. (T. 297.)

not substantiated by his treatment notes or supported by the record.

Dr. Barbano supports his assessment of plaintiff's limited ability to sit, stand, or walk by stating that plaintiff cannot sustain a stationary position of her head. (T. 317.) However, in his treatment notes, Dr. Barbano stated that by employing a sensory trick,[6] she could keep her head straight. (T. 298.) Dr. Barbano also found plaintiff's motor strength, leg strength, and sensation to be normal, (T. 287, 301), noted only minor limitations in her range of motion,[7] and stated that plaintiff responded positively to drug therapy.[8]

Dr. Drexler, a non-examining physician who reviewed plaintiff's medical records on behalf of the Social Security Administration, did not believe that torticollis would place such a severe restriction on the hours the plaintiff could sit or stand. (T. 320.) Dr. Drexler conceded that plaintiff would "probably be uncomfortable in most positions," but that by employing a sensory trick, her pain could be controlled. (T. 320–321.)

Dr. Putcha, a non-examining physician who reviewed plaintiff's medical records on behalf of the Social Security Administration, found plaintiff could stand and/or walk about six hours in an eight-hour work day and sit less than about six hours in an eight-hour work day.

Additionally, Perri Pease, PT, who examined plaintiff regularly for several months, said that plaintiff "exhibited minimal restrictions in extension, as well as right rotation and left side bending," prior to plaintiff's termination of physical therapy. (T. 259.) Dr. David Austin, who examined plaintiff on September 23, 1996, found that plaintiff had "mild neck pain and left shoulder pain." (T. 258.) Plaintiff was also examined by Dr. Susan Smith and Dr. Webster Pilcher on June 17, 1996, who found "[h]er gait was non-antalgic, she was able to toe/heel/antero and retrograde tandem with no difficulty." (T. 251.)

Dr. Barbano's statements, regarding side effects of plaintiff's medications, are also not supported by his treatment notes. Dr. Barbano did not mention that plaintiff suffered any side effects from her drug therapy. (T. 281.) However, in May 1998, Dr. Barbano stated that plaintiff's concentration and consistency of work ability would be mildly impaired and that her ability to sustain work pace would be significantly impaired because her medication causes tiredness, decreased concentration, and forgetfulness. (T. 305, 308.) The ALJ noted that this statement was not substantiated anywhere in Dr. Barbano's treatment notes and contradicted plaintiff's testimony that she "read[s] quite a bit." (T. 65.) It also contradicted the assessment of Dr. Faiz Khan, a consultative physician hired by the administration to examine plaintiff, who found all of plaintiff's mental functional capacities to be fair to good, on a rating scale of good, fair, seriously limited, and poor. (T. 310–314.)

■ Taken as a whole, the record plainly demonstrates that plaintiff's functional

---

6. The sensory trick, or geste antagonist, suggested by Dr. Barbano, requires plaintiff to constantly touch a finger to her chin. This relaxes the muscles in her neck reducing pain and controlling muscle spasm, thus allowing plaintiff to her to hold her head in a fixed position. (T. 305.)

7. Dr. Barbano noted that plaintiff's spine was limited in motion to the left by fifteen degrees, that plaintiff's neck was limited to the same

degree, and that plaintiff's head was limited in motion to the left by twenty-five degrees. (T. 284.)

8. Dr. Barbano noted that Klonopin 0.25 mg relaxed Plaintiff's neck and reduced her pain, (T. 286), and in June 1997 stated that the Botox injections he had given plaintiff on a regular basis had "clearly resulted in increased right rotation and decreased size of the right SCM," (T. 297).

capacity was consistent with a determination that plaintiff could perform her past relevant work. As an LPN charge nurse, plaintiff supervised four nurse's aides and frequently was required to be on her feet pushing a medical cart, used to dispense medications to patients. (T. 53.) Plaintiff testified that she was never required to lift anything over ten pounds. (T. 53.) The nature of plaintiff's past relevant work is well suited to the limitations plaintiff's condition poses. Plaintiff is more comfortable standing, (T. 67), and her duties as an LPN charge nurse would allow her to stand and walk the majority of the time and to sit occasionally. Plaintiff would be required to push/pull frequently, which several physicians, including her treating physician Dr. Barbano, concluded she could do without limitation. Additionally, she would not be required to lift more than ten pounds, which she is able to do frequently. Her pain can be managed by employing a sensory trick and by taking medication, to which plaintiff did not exhibit any side effects. While plaintiff may experience some pain, a determination of disability requires more than mere inability to work without pain or discomfort. *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983). "To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment of claimant." *Id.* Plaintiff has failed to show her pain constitutes a disability.

Therefore, since none of plaintiff's functional limitations preclude her from performing her past relevant work, I find that the ALJ properly determined that plaintiff did not have a disability under the Social Security Act.

*C. The ALJ's Decision to Close the Administrative Record*

■ Finally, plaintiff contends that the ALJ erred in closing the administrative record. Plaintiff argues first that the ALJ

should have allowed her to submit additional interrogatories to the medical expert, Dr. Drexler. I find that the ALJ reasonably determined that additional interrogatories were unnecessary, since Dr. Drexler provided complete responses to two interrogatories, one submitted by the plaintiff.

Secondly, plaintiff argues that the ALJ did not hold the record open to allow plaintiff to submit updated medical records. Plaintiff's request to hold the record open for a period of one month was contained in a letter dated February 2, 1999. (T. 205.) The ALJ issued his decision March 4, 1999, (T. 41), exactly thirty days after the date of plaintiff's request. Thus, the ALJ complied with plaintiff's request and I find this claim unsubstantiated.

### CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket No. 7) is granted, and plaintiff's motion for judgment on the pleadings (Docket No. 5) is denied. The complaint is, therefore, dismissed.

IT IS SO ORDERED.