Sultan A. AZAMI, Plaintiff,

v.

**Kenneth APFEL, Commissioner of the Social Security Administration,[1] Defendant.**

**No. CV 96–4070 JG.**

United States District Court, C.D. California.

Oct. 15, 1998.

---

1. Kenneth S. Apfel was officially sworn in as the Commissioner of the Social Security Administration on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for Shirley S. Chater as the defendant in this case. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

Lawrence D. Rohlfing, Lawrence D. Rohlfing Law Offices, Santa Fe Springs, CA, for plaintiff.

John K. Rubiner, Asst. U.S. Atty., Office of U.S. Attorney, Civ. Div., Los Angeles, CA, for defendant.

## MEMORANDUM AND ORDER
### (Social Security)

GROH, United States Magistrate Judge.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of the Social Secu-

rity Administration (Commissioner) denying his application for supplemental security income benefits (SSI) under Title XVI of the Social Security Act. Defendant has answered and the parties have filed cross-motions for summary judgment. For the reasons discussed below, I conclude that the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed his current application for SSI on April 23, 1992, claiming disability since March 9, 1985, due to chest pain, back pain, and fainting spells. (Administrative Record (A.R.) 254–257.) [2] After his claim was denied initially and upon reconsideration, plaintiff received a hearing before ALJ Templin on June 21, 1995. (A.R.10–11, 22, 283–299.) Plaintiff was represented by a non-attorney and testified through an interpreter. Expert testimony was received from a physician and from a vocational specialist. (A.R.22.)

In a written decision dated July 10, 1995, ALJ Templin explicitly declined to reopen plaintiff's prior applications. (A.R.11.) He determined that plaintiff retained the capacity to perform his past relevant work as a general office clerk and, accordingly, denied his claim at step 4 of the sequential evaluation procedure. [3] (A.R.14–15.) The Appeals Council denied plaintiff's request for review, and this appeal followed. (A.R.3–4.)

## RELEVANT RECORD EVIDENCE

Plaintiff was 60 years old at the time the ALJ's decision was issued. (A.R.15, 254.) He testified that he had ten years of edu-

cation in his native Afghanistan. His past work was performed in that country, where he was employed as a clerk for the Department of Water and Power in Kabul. (A.R. 36–38; Pl's Mem. at 7.) He held that position for at least 15 years, until emigrating to the United States in 1981. (A.R.37, 101.) There is no evidence that he has been employed since that date. (A.R.14, 36–37.)

Plaintiff testified that he could not work because of pain in his lumbar area and right leg stemming from an accident in which he was hit by a car while waiting for a bus. (A.R. 39–40; see also A.R. 97.) He averred that he could walk only to the bedroom and back and could stand, with a cane, for no more than a few minutes. (A.R.40–41.) He also testified that he could not sit for long periods and could not lift "anything." (A.R.41–42.)

The medical expert testified that the medical records show that he had degenerative joint disease of the lumbar spine and chronic lumbar stain. (A.R.29.) He found no evidence of weakness in the lower extremities. (A.R.34.) He concluded that plaintiff was capable of lifting or carrying 50 pounds occasionally and 25 pounds frequently and that plaintiff had no nonexertional limitations. (A.R.30.)

The vocational expert testified that plaintiff's past work in his native land corresponded to that of a "general office clerk" as defined by the *Dictionary of Occupational Titles* (DOT). (A.R. 46.) Based on plaintiff's testimony, she described that work as semi-skilled and light. (A.R.45–50.)

**2.** Plaintiff filed three prior SSI applications. His applications filed in April 1989 and September 1989, alleging disability since August 1986, were both denied at the initial determination level on the grounds that plaintiff had the capacity to perform his past work as an office worker. (A.R.72, 89.) His application filed in March 1990, alleging an onset date of July 1986, was denied after a hearing before Administrative Law Judge (ALJ) Stuller, who determined that plaintiff retained the functional capacity to perform his past relevant work as an office helper. The Appeals Council denied review of that decision, and plaintiff did not appeal. (A.R.237–245, 251–252.)

**3.** The regulations prescribe a five-step evaluation. 20 C.F.R. §§ 404.1520, 416.920. In summary, in order to determine disability:

[t]he following steps are addressed in order. (1) Is the claimant presently unemployed (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Does the impairment prevent the claimant from performing his/her past relevant work? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984); *see also Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir.1991).

## DISCUSSION

Under 42 U.S.C. § 405(g), the Commissioner's decision is subject to review in order to determine whether: (1) the findings are supported by substantial evidence, and (2) the Commissioner applied the proper legal standard. *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Plaintiff contends (1) that ALJ Templin erred in finding, at step 4, that he has a residual functional capacity (RFC) for medium work and can perform his past relevant work as an office clerk, (2) that his work in Afghanistan was not "past relevant work" within the meaning of the applicable regulations, and (3) that, assuming a residual functional capacity for light work, he should be found disabled at step 5 under Rule 202.01 of the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpt. B., App. 2.

### 1. *Residual Functional Capacity Determination*

██ Plaintiff advances the imaginative, if not misleading, argument that *res judicata* operates as a bar against ALJ Templin's determination that he can perform medium work. The thrust of plaintiff's argument is

4. The finding that a claimant can perform medium work subsumes a finding that the individual is capable of the full range of light work. 20 C.F.R. § 416.967(c).

5. Although applied less rigidly to administrative than to judicial proceedings, the principles of *res judicata* apply to administrative decisions. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.1988); *see also* 20 C.F.R. § 416.1457(c)(1) (ALJ may dismiss hearing request or refuse to consider one or more issue(s) on *res judicata* grounds). The doctrine may be invoked to bar a claim that has already been finally decided, unless its application would "'contravene an overriding public policy or result in manifest injustice.'" *Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir. 1982); *see also Lester v. Chater*, 81 F.3d 821, 827 (9th Cir.1995) (as amended). A binding determination of non-disability also creates a presumption of continuing non-disability with respect to

that ALJ Stuller's finding that he has a residual functional capacity (RFC) for light work is entitled to preclusive effect, and that ALJ Templin therefore erred in determining that he can perform medium work. While that may be so, the error is of no consequence. Plaintiff admits that he can perform the full range of light work, consistent with the prior determinations, and does not challenge the vocational expert's classification of his past work as light. *A fortiori*, plaintiff has not sustained his burden at step four to show that he cannot perform his past relevant work. Beyond that, ALJ Templin based his ultimate disability determination on the finding that plaintiff could perform his past, light-level work, not on his maximum RFC for medium work.[4] Thus, even if ALJ Templin erred in not according preclusive effect to the prior RFC determinations, that error was harmless. *See Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 434 (9th Cir.1988) (per curiam) (ALJ's classification of past work as "light" harmless error where he also found claimant able to perform other light work); *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir.1984).

██ It is nonetheless true that *res judicata* has forceful application in this case.[5] Properly applied, however, the doctrine operates against plaintiff, not in his favor. There were three prior final determinations that plaintiff could perform his past relevant work as an office helper, and ALJ Templin explicitly declined to reopen the prior applications.[6]

the period after the date of the prior decision. *Lester*, 81 F.3d at 827; *Lyle v. Secretary of Health and Human Services*, 700 F.2d 566, 567 (9th Cir.1983). The presumption may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. *See Lester*, 81 F.3d at 827–828.

6. *See* note 2, *supra.* The decisions denying the two applications filed in 1989 became binding when they were not appealed beyond the initial determination level. *Taylor*, 765 F.2d at 876 ("The principal [sic] of *res judicata* applies to findings and decisions on the merits which become final as a result of a claimant's failure to seek administrative review after notice of an adverse decision."). ALJ Stuller's decision became binding when the Appeals Council denied review

Consequently, the prior findings and determinations of non-disability are binding for the period through the date of ALJ Stuller's decision, January 28, 1992. *Chavez v. Bowen,* 844 F.2d at 693 (prior findings as to RFC, education, and skill level are binding); *Lyle v. Secretary of Health and Human Services,* 700 F.2d 566, 568 (9th Cir.1983) (prior determination given *res judicata* effect through date of decision).

Plaintiff attempts to use his failed claim of *res judicata* (with respect to the prior finding that he has the RFC for light work) as a bootstrap to a step-five determination that he is disabled under the grids. This effort to finesse the step-four determination must fail. What he refuses to acknowledge is that the prior determination that he can perform his past relevant work (and is therefore not disabled at step 4) is also *res judicata* for the period through January 28, 1992. The prior determination also conclusively establishes that plaintiff's work in Afghanistan was "past relevant work" (and therefore "substantial gainful activity") within the meaning of the regulations. *See infra,* pp. 1012–13.

For the period after ALJ Stuller's decision (February 1992–July 1995), the prior determinations create a presumption of continuing non-disability. *See* note 5, *supra.*[7] Plaintiff has failed to rebut the presumption by showing "changed circumstances."[8] Indeed, he concedes that he retains the functional capacity for light work[9] and does not argue—

much less prove—that his past work was anything other than light work. Nor has he shown why the preclusive effect of the prior step-four determination should be invalidated.

■ Finally, the mere fact that plaintiff was represented by a non-attorney is not enough to overcome the presumption of continuing non-disability.[10] That his representative, Rosa Fagerian, may have been unfamiliar with the concept of *res judicata* does not mean that she was unable, or failed, adequately to represent plaintiff, nor has plaintiff identified any specific defects in the record. Ms. Fagerian (who apparently held herself out as providing "Legal Services" (A.R.48)) represented plaintiff at both hearings, although only the transcript of the hearing before ALJ Templin is included in the record. Her examinations of plaintiff, the medical expert, and the vocational expert at that hearing demonstrate that she was familiar with the relevant issues and cognizant of the need to develop the record in her client's behalf. (A.R.32–34, 38–43, 46–49, 50.) Her colloquies with the ALJ also indicate that she understood the procedural requirements and the issues at the hearing. (A.R.43–45, 51–52.) The record is well-developed in other respects as well, including, as it does, plaintiff's treatment records, several consultative reports, and numerous disability reports and questionnaires; moreover, the ALJ took steps to insure that favorable evi-

---

and plaintiff did not appeal. Each of those earlier applications involved the same claims and resulted in determinations that plaintiff could perform his past work as an office worker.

**7.** In his reply brief, plaintiff advances the new argument that *res judicata* should be invoked as to ALJ Stuller's light work assessment, but not as to his ultimate determination of non-disability. (Pl's. Reply at 4–5.) This argument is simply contrary to the law. *Lester,* 81 F.3d at 827.

**8.** Contrary to plaintiff's assertions, this burden is not met by the mere conclusion that plaintiff suffers "degenerative joint disease" and "chronic lumbar strain," as these findings do not, of themselves, establish that his functional capacity has deteriorated. Indeed, plaintiff's admission that he remains capable of light work demonstrates that any change in his condition was *de minimis.* Nor do those findings, standing alone, constitute the new facts demonstrating the existence of an impairment that was not considered in the prior decision. To the contrary, all of the prior appli-

cations involved the same claims of disability stemming from back and leg impairments, and— as plaintiff elsewhere concedes—the functional effect of those impairments has been fully litigated. (Pl's. Mem. at 4:1–3.)

**9.** Indeed, he argues that he should be found disabled under grid rule 202.01, which presumes an ability to perform the full range of light work.

**10.** To the extent that plaintiff has read *Lester* and *Gregory* to bar the application of *res judicata* in the absence of counsel, he is mistaken. Those cases stand for the proposition that when a plaintiff's lack of representation has led to the creation of a inadequate record, *res judicata* (and the presumption of continuing disability) should not be rigidly applied, particularly when other factors (such as a change in the claimant's age category or evidence of an impairment not previously considered) also mitigate against its strict application. *See Lester,* 81 F.3d at 827–828 and 828 n. 4; *Gregory,* 844 F.2d at 666; *Thompson,* 665 F.2d at 940–941.

dence was elicited by requesting records from plaintiff's physicians. (*See* A.R. 1–2, 54–56, 320–323.) In light of the foregoing, plaintiff's assertions about the absence of counsel are unavailing.

### 2. *Past Relevant Work*

■ Plaintiff contends that the ALJ erred in concluding that his employment in Afghanistan was past relevant work because his earnings fell below the presumptive minimums for substantial gainful activity (SGA). That argument is unpersuasive, for two reasons.

First, ALJ Stuller found that plaintiff could perform his past relevant work as an office helper, and plaintiff did not appeal that decision. (A.R. 243, Finding No. 5.) That same determination was made in connection with plaintiff's two prior applications. (*See* notes 2 & 6, *supra.*) Those prior, binding determinations subsume the finding that plaintiff's past work was substantial, gainful activity. 20 C.F.R. §§ 416.920(e), 416.971–416.975. Plaintiff is, accordingly, barred from relitigating the issue of whether his work in Afghanistan qualifies as "past relevant work." Even if the rule were otherwise, plaintiff has simply not met his burden to

prove that his work in Afghanistan was not "substantial, gainful activity" within the meaning of "the regulations." *See id.*[11]

Plaintiff's principal argument is that the earnings test has not been satisfied. Earnings are a presumptive, but not conclusive, indicator of substantial gainful activity.[12] Other factors to be considered are the nature of the work performed, how well the claimant performs the work, whether the work is done under special conditions, whether the claimant is self-employed, and the amount of time spent working—matters that were explored at the hearing. 20 C.F.R. §§ 416.973–416.974; *Katz v. Secretary of Health and Human Services*, 972 F.2d 290, 293 (9th Cir. 1992).

Plaintiff asserts that his work as an office clerk was not SGA because his earnings of 2,100 Afghani a month equalled $40 a month at the January 1982 exchange rate, well below the presumptive minimum for SGA ($300 per month) for calendar years 1979–1989. If that argument were valid, very little employment in third-world countries could be considered past relevant work. The argument is simplistic in that it fails to take into account the relative value of plaintiff's earnings in the Afghan economy.[13]

---

11. Contrary to defendant's suggestion, there is nothing in the relevant rulings or case law to suggest that the "substantial gainful activity" requirement is abrogated when a claimant's past work was performed in a foreign country. Social Security Ruling (SSR) 82–40 states that an individual is to be found disabled only if his "physical or mental impairment(s) is the primary reason for inability to engage in substantial gainful activity.... The proper test [at step four] is whether the individual can do his or her previous work, whether in the U.S. or in a foreign economy. A job in a foreign economy need not have a counterpart in the U.S. economy...." In *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457–58 (9th Cir.1989), the court did not discuss the SGA requirement, apparently because it was not disputed; however, the court's opinion makes it clear that the "past relevant work' determination is the same for work performed in the U.S. or in a foreign country.

12. The regulations state as follows: "Generally, if you worked for substantial earnings, this will show that you are able to do substantial gainful activity. On the other hand, the fact that your earnings are not substantial will not necessarily show that you are not able to do substantial gainful activity." 20 C.F.R. § 416.974(a). For the years 1979–1989, earnings averaging above $300 a month "will ordinarily show" that a

claimant has engaged in SGA, and earnings averaging less than $190 a month "will ordinarily show" a lack of SGA. *Id.* at § 416.974(b)(2)(vi), (b)(3)(vi).

13. It bears repeating that meager earnings of just over $300 a month were sufficient to establish presumptive SGA in the United States. In other words, poverty-level earnings sufficed to establish SGA. According to plaintiff's own exhibit (Pl's Mem. at 34), the exchange rate when he last worked in Afghanistan was about 50.6 Afghani to $1 US, and the annual per capita income (PCI) was about $168 US, or approximately 8500 Afghani. It is thus obvious that the $300 *monthly* minimum for U.S. residents is nearly twice the per capita income in Afghanistan for an entire year. Thus, using plaintiff's figures, it would have taken monthly earnings of 15,180 Afghani—more than 21 times the average monthly PCI—to meet the $300 minimum earnings standard. As it is, plaintiff fared much better than the average citizen. His annual earnings of 25,200 Afghani are about three times the annual PCI in his country, yet are only 14% of the minimum SGA earnings (annualized). These comparisons demonstrate that the guidelines cannot be applied to foreign earnings without taking into account differences in the economies and currency values. Unfortunately, it does not appear that the Com-

Plaintiff's testimony that he worked for a public utility for fourteen to fifteen years, six hours a day, six days a week, also indicates that his work *was* both substantial and gainful.[14] *Cf. Katz*, 972 F.2d at 291, 294 (part-time clerical duties were SGA where plaintiff failed to rebut earnings presumption, had worked for many years, and had proved satisfactory to her employer).

For all of the above reasons, plaintiff has not met his burden to prove that his past work was not substantial, gainful activity.

## CONCLUSION

For the reasons stated above, I conclude that the Commissioner's decision is supported by substantial evidence and comports with the proper legal standards. The Commissioner's motion for summary judgment is therefore GRANTED and the complaint is dismissed with prejudice.

missioner has published a schedule of comparable earnings for foreign countries.

14. Moreover, it is reasonable to surmise that in a country with a literacy rate of 12%, the ability to read and write would have significant economic value. (Pl's Mem. at 33–34.)