Gary CROWLEY, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security,[1] Defendant.

No. 01–CV–6313L.

United States District Court, W.D. New York.

Aug. 2, 2002.

---

1. Plaintiff's complaint names former Commissioner of Social Security Larry G. Massanari. Jo Anne B. Barnhart, the current Commissioner, is automatically substituted as defendant pursuant to Fed.R.Civ.P. 25(d)(1).

Christopher M. Mesh, Connors & Ferris, LLP, Rochester, NY, for plaintiff.

Brian M. McCarthy, AUSA, Rochester, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security [hereinafter "Commissioner"] that plaintiff, Gary Crowley, was not disabled under the Social Security Act and therefore, was not entitled to benefits. Plaintiff, Gary Crowley, applied for Social Security disability insurance benefits in January 2000. (T. 78–80.)[2] Plaintiff alleged that he was unable to work because he suffered from severe diabetes mellitus[3] and an anxiety disorder due to the diabetes[4]. (T. 94.) In a decision dated Febru-

---

2. "T.___" refers to the page of the Administrative Record filed by the Commissioner with her answer.

3. "[A] metabolic disease in which carbohydrate utilization is reduced and that of lipid and protein enhanced. It is caused by deficiency of insulin and is characterized, in more severe cases, by glycosuria, water and electrolyte loss, ketoacidosis, and coma." *Stedman's Medical Dictionary* 388 (5th ed.1982).

4. "In psychoanalysis, apprehension of danger and dread accompanied by restlessness, ten-

ary 5, 2001, the Administrative Law Judge [hereinafter "ALJ"] found that plaintiff was ineligible for benefits. (T. 11–16.) This decision became the final decision of the Commissioner on May 15, 2001, when the Appeals Council denied plaintiff's request for review. (T. 5–6.) Both the plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). As discussed below, the Commissioner's decision is affirmed, and the complaint is dismissed.

## PLAINTIFF'S BACKGROUND

Born on July 5, 1939, plaintiff Gary Crowley is currently sixty-two years of age. He has a high school education, a bachelor's degree in science education, and a master's degree in science education. (T. 23–24.) He has work experience as a salesman for a construction company, which involved showing new homes and handling paper work; as an assistant to an owner of a country club, where he performed various and sundry tasks; and as a carpet salesman. (T. 26–31.) Additionally, plaintiff worked from his home as a self-employed personnel recruiter from June 1986 to March 1995. (T. 31.) The job was sedentary, as defined in 20 C.F.R. § 404.1567(a). (T. 31–32, 95.)

## GENERAL STANDARDS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court is limited to determining whether the Commissioner's conclusions are supported by substantial evidence. See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) ("It is not the function of a reviewing court to determine de novo whether a claimant was disabled"). The Commissioner's findings of fact, if supported by substantial evidence, are binding. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir.1991). Substantial

evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### B. Standard for Determining Disability

A person is "disabled" under the Social Security Act and therefore entitled to benefits, when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of an "anatomical, physiological or psychological abnormalit[y], [] demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

## DISCUSSION

Applying the usual five-step process for evaluating disability claims, see Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999) (discussing five-step process delineated in the relevant regulations); 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 31, 1999, (T. 24, 78), and that plaintiff suffered from diabetes mellitus, a severe impairment, (T. 12).

sion, tachycardia, and dyspnea ... related to current life problems." Id. at 94.

The ALJ found that this impairment did not meet or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1, (T. 12), and then proceeded to the fourth step and determined that plaintiff had the residual functional capacity to return to his past relevant work as a personnel recruiter, (T. 14). Thus, the ALJ found that plaintiff was not disabled under the Social Security Act. (T. 15.) As discussed below, the Commissioner's decision is supported by substantial evidence and is affirmed under 42 U.S.C. § 405(g).

I find that the ALJ considered all the evidence in the record and found nothing to suggest that plaintiff was unable to perform sedentary activity.

 In determining the claimant's physical ability, or residual functional capacity, the Commissioner must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. *Ferraris v. Heckler,* 728 F.2d 582, 585 (2d Cir.1984). If it is found that the Commissioner properly considered all of the evidence on the record, her determination must be affirmed. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991).

Plaintiff was diagnosed with (1) polycythemia [5] (T. 151, 157, 269); (2) controlled hypertension [6] (T. 142, 144, 160); (3) mild degenerative disc disease [7] (T. 142); (4) an anxiety disorder (T. 243); and (4) diabetes mellitus. Plaintiff's condition of polycythemia was found to be stable by an examining physician, Dr. R. Thomas Abderhalden, and plaintiff was simply advised to give blood every two months for treat-

ment. (T. 157, 269.) Plaintiff also had controlled hypertension, for which no treatment was required. (T. 142, 144, 160, 36–37.) Plaintiff testified that his condition of hypertension "was good now." (T. 35.) Accordingly, the ALJ found these non-severe conditions did not limit plaintiff's residual functional capacity. (T. 14.)

Additionally, plaintiff was diagnosed with mild degenerative disc disease. Though plaintiff had pain in his back and hips, (T. 35), his treating physician stated that plaintiff's back appeared normal and that plaintiff had full range of motion, (T. 160). Notably, plaintiff testified "I don't consider those things disabling me from working," (T. 35), and indeed, plaintiff testified that he did not experience difficulty or pain when sitting, (T. 42, 45). Therefore, the ALJ found that this non-severe impairment did not prohibit plaintiff from engaging in sedentary work. (T. 14.)

Plaintiff was also diagnosed with an anxiety disorder associated with plaintiff's diabetic condition. (T. 242.) Dr. Faiz Khan, a consultative psychologist retained by the Commissioner, examined plaintiff on July 25, 2000. (T. 243). He did not note any significant limitations associated with this disorder, and recommended out-patient psychiatric care. (T. 243.) Dr. C. Richard Noble, a non-examining psychologist who reviewed plaintiff's medical records at the request of the Commissioner, found that plaintiff was capable of low stress work. He determined that plaintiff's anxiety was centered around his fluctuating blood sugar levels but that it did not significantly limit any of his mental functions. (T. 55.) Plaintiff did not seek additional psychiatric treatment or take medication for this con-

---

5. "[A]n increase above the normal in the number of red cells in the blood." *Stedman's Medical Dictionary* 1117 (5th ed.1982).

6. "High blood pressure." *Stedman's Medical Dictionary* 676 (5th ed.1982).

7. "Deterioration" of the spinal column. *Stedman's Medical Dictionary* 369 (5th ed.1982).

dition. (T. 37.) Accordingly, the ALJ considered this condition non-severe and concluded that it would not significantly limit plaintiff's ability to perform work-related activities. (T. 14.)

Therefore, the only serious impairment that plaintiff suffered from was diabetes mellitus. However, the record does not support plaintiff's assertion that this condition prohibited him from engaging in sedentary work. Moreover, in plaintiff's motion for judgment on the pleadings, he failed to identify anything in the record to support his assertion. (Docket No. 9.)

The ALJ noted in his decision that plaintiff's "diabetes was under poor control," but found that the record did not reflect that plaintiff was incapable of performing sedentary work. (T. 13.) Dr. Wesley Canfield, a consultative physician examined plaintiff on July 17, 2000. In an otherwise unremarkable physical exam, Dr. Canfield did observe some "mild glove-stocking hypesthesia [8]" in plaintiff's hands and feet. (T. 241.) Based upon this examination, Dr. Canfield determined that "plaintiff could certainly do sedentary activities," but that plaintiff's hypesthesia "would probably contraindicate such activities as climbing ladders, working at heights, being exposed to temperature extremes, or working around dangerous moving machine parts" and that plaintiff's diabetes may cause him to "feel fatigued or become fatigued sooner than normal." (T. 241.)

Dr. In Seok, a non-examining physician who reviewed plaintiff's medical records on behalf of the Social Security Administration, concluded that plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and/or walk about 6 hours in an 8–hour workday, sit about 6 hours in an 8–hour workday, push and/or

pull without limitation, occasionally climb, balance, stoop, and crouch, and never kneel or crawl. He found that plaintiff had no manipulative, visual, or communicative limitations. Further, due to plaintiff's hypesthesia, Dr. Seok concluded that plaintiff should avoid concentrated exposure to extreme cold and heat and should avoid all exposure to hazards such as machinery and heights. (T. 245–252.)

After considering the medical record and finding "no evidence [] of any medically determinable diabetic complications, nor [] any evidence that the claimant's diabetes preclude[d] him from performing sedentary activities," (T. 13), the ALJ proceeded to consider plaintiff's subjective allegations of disability. The ALJ found that plaintiff's testimony at the hearing regarding his limitations was largely inconsistent with medical evidence. (T. 32, 94, 15.) Accordingly, the ALJ then evaluated the credibility of the claimant.

In assessing a claimant's credibility, the ALJ considers various factors, including (i) the claimant's daily activities, (ii) the location, duration, frequency, and intensity of pain; (iii) the type, dosage, effectiveness, and side effects of medication; and (iv) other treatment that relieves pain. 20 C.F.R. § 404.1529(c)(3); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984). After considering these factors, an ALJ is entitled to make a credibility determination. *See Tejada v. Apfel*, 167 F.3d 770, 775–776 (2d Cir.1999); *Jordan v. Apfel*, 192 F.Supp.2d 8, 13–14 (W.D.N.Y. 2001) (noting that after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment).

---

**8.** "[D]iminished sensitivity to stimulation." *Stedman's Medical Dictionary* 678 (5th ed.1982).

The ALJ decided to discredit plaintiff's subjective estimation of his functional limitations. In making this conclusion, the ALJ properly considered each of the factors listed in 20 C.F.R. § 404.1529(c)(3). Plaintiff testified that his daily activities included caring for his personal needs, climbing stairs two to three times a day, performing household chores such as vacuuming, dusting, laundry, cooking, shopping, and driving. (T. 39, 42, 103, 104.) Plaintiff frequently did "day traveling,"[9] watched TV, read "a lot," and generally took a nap one or two times a day, for about an hour. (T. 40, 42, 103, 104.)

The ALJ then considered plaintiff's subjective assessment of his functional limitations. Plaintiff complained that his physical limitations allowed him to stand only 15–20 minutes at a time and walk a half-mile, but plaintiff did not claim any pain or difficulty sitting for long periods of time, or any limits of mobility.[10] (T. 34, 42, 43, 45, 160.) He asserted he can lift up to fifty pounds and probably could lift twenty pounds occasionally. (T. 42.) Also, though plaintiff's blood sugar was not always under control even with maximum medication, no functional limitation resulted from this condition that would preclude plaintiff from performing sedentary activity. In fact, plaintiff was employed when his blood sugar was the most volatile, and plaintiff did not voluntarily terminate his employment. (T. 94.) Notably, on May 28, 1999, three days prior to plaintiff's alleged onset date of disability, plaintiff told his treating physician Dr. Reddy that "[h]e generally feels well without particular problems." (T. 147.)

Finally, the ALJ considered the type, dosage, effectiveness, and side effects of plaintiff's medications. Since plaintiff stopped working, he has not received chiropractic treatment or mental health counseling and has not seen a physical therapist, psychiatrist, or psychologist. (T. 37.) Plaintiff followed a drug treatment program consisting of oral diabetic medications and regular injections of insulin. No side effects of this program were noted in the record. Also, plaintiff enrolled in a diabetic education clinic and "walk[ed] long distances" frequently for exercise, which positively affected his blood sugar levels. (T. 149.)

Where, as here, the ALJ has exercised his discretion and evaluated plaintiff's credibility, the Court may not examine the evidence and substitute its views for those of the Commissioner. 42 U.S.C. § 405(g); see *Parker v. Harris*, 626 F.2d 225 (1980).

■ In sum, I find that the record, viewed in its entirety, clearly supports the ALJ's determination that plaintiff retained the residual functional capacity to perform his past employment. Working from his home as a personnel recruiter, plaintiff primarily sat at a desk and made frequent telephone calls. (T. 31–32.) Plaintiff testified that he sat approximately 5 to 8 hours per day and carried less than ten pounds. (T. 32.) Plaintiff also testified that his hours varied, and the ALJ concluded that because plaintiff set his own work schedule, he could nap if he wished. Therefore, since none of plaintiff's functional limitations preclude him from performing his past relevant work, I find that the ALJ properly determined that plaintiff did not have a disability under the Social Security Act.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the

---

9. The ALJ noted that plaintiff planned to drive to Rochester immediately following the hearing (a distance in excess of 80 miles). (T. 14.)

10. Plaintiff was able to squat, bend at the waist, and reach without limitation. (T. 42–43.) He was observed to have full mobility of the spine. (T. 160.)

pleadings, (Docket No. 6), is granted, and plaintiff's motion for judgment on the pleadings, (Docket No. 9), is denied. The complaint is, therefore, dismissed.

IT IS SO ORDERED.