**Paula ARAGON–LEMUS, Plaintiff,**

v.

**Joanne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 02–CV–6399L.

United States District Court, W.D. New York.

Aug. 7, 2003.

Catherine M. Callery, Esq., Public Interest Law of Rochester, Rochester, NY, for plaintiff.

Brian M. McCarthy, AUSA, United States Attorney, Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### I. Procedural Posture

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Paula Aragon–Lemus ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to benefits. Plaintiff applied for benefits under Title XVI of the Act on June 28, 1996 (T. 70, 72–85).[1] Her application was denied both initially, (T. 48–51), and upon reconsideration (T. 54–57). Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which was held on March 25, 1998 (T. 22–45). The ALJ, after considering all of the evidence, decided that plaintiff was not disabled under the meaning of the Act (T. 11–17). The decision of the ALJ became the final decision of the Commissioner on May 30, 2002 when the Appeals Council denied plaintiff's request for review of the ALJ's decision (T. 6–7).[2]

Plaintiff timely appealed the Commissioner's decision and the action is properly before this Court. The Commissioner and

---

1. "T. ___" refers to the page of the administrative transcript filed by the Commissioner.

2. The copy of Appeals Council denial letter in the record bears no apparent date. Both of the parties, however, reference this date as the date of the Appeals Council decision.

plaintiff have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this opinion.

## II. Factual Background

Plaintiff is a political refugee from Cuba. She came to the United States in 1995 in order that she might have the freedom to practice her religion and teach the same to her children (T. 28). Plaintiff apparently has a high school education and has allegedly worked as a "sewing machine operator/instructor" (T. 11, 16). On or about February 22, 1996, plaintiff visited Dr. P. William Haake, who diagnosed her with mild degenerative disc disease and scoliosis (T. 121–22). Dr. Haake noted that plaintiff's range of motion in the cervical spine was not limited, she was able to walk, and that she had good grip strength (T. 121). He prescribed no medication and only a cervical collar, but later reports from Dr. Haake indicate that plaintiff was not wearing the cervical collar (T. 119).

Later that year, on October 15, 1996, Dr. Murli Raghavan examined plaintiff for the New York State Department of Social Services Office of Disability Determinations ("DDS"). After noting that plaintiff did the household chores with help from her husband, Dr. Raghavan measured some of plaintiff's non-exertional capacities (T. 105–106). The doctor performed no tests or analysis on plaintiff's ability to walk, stand, sit, push, or pull. Dr. Raghavan's ultimate conclusion was that plaintiff indeed suffered from moderate scoliosis and recurrent headaches and opined that she was "probably only suited for a sedentary light job" (T. 106).[3]

Soon after that examination, on or about November 7, 1996, plaintiff saw another treating physician, Dr. Douglas H. Jones. Dr. Jones described plaintiff as being "in no severe distress," but because of tenderness of plaintiff's neck, shoulder, and back muscles, plaintiff's ailments were "consistent with a muscle spasm/fibromyalgia[4] picture" (T. 131–32). Only a few weeks later, Dr. Jones saw plaintiff and noted that plaintiff looked "somewhat better," but while she was under "no acute distress[,] ... she was still showing tenderness to palpation of the muscles of the neck, shoulders[,] and upper back" (T. 133). In December 1996 though, a non-examining DDS physician opined that

---

3. "Sedentary" work is defined as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

"Light" work is defined as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

4. "Fibromyalgia" is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." *Stedman's Medical Dictionary* 671 (27th ed.2000).

plaintiff retained the functional capacity to do "medium" work (T. 95–102).[5]

In January 1998, Dr. Jones again found that plaintiff was "in no severe distress[,] but was uncomfortable" and noted that there was "quite significant tenderness to palpation of the muscles of the neck, shoulders[,] and upper back ..." (T. 135). He suggested that normalizing plaintiff's sleep pattern "might be the key" to her treatment (T. 135). Dr. Jones answered the ALJ's request for an update on plaintiff's condition on March 10, 1998, saying that plaintiff's ailments "may likely inhibit her from any meaningful employment at this time," but was unable to determine plaintiff's specific exertional limitations because plaintiff failed to keep her appointment at which a functional capacity evaluation was to be performed (T. 130).

At her hearing, plaintiff testified to pain in her "whole body," (T. 32), and an inability to sit or stand for any prolonged period of time because her bones hurt (T. 29–30). Plaintiff reported being able to walk about three blocks or, if carrying around ten pounds, only one block (T. 33). In order to relieve her pain, plaintiff said that she must go to a dark, silent room and stay in bed much of the time (T. 33–35). Plaintiff testified to being not able to do most household chores and needing assistance from her husband, neighbor, son, and sister (T. 35–36, 42).

### III. Legal Standards

#### A. *"Disability" Under the Act*

A person is "disabled" under the Act and, therefore, entitled to benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of an "anatomical, physiological, or psychological abnormalit[y] ... demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ The Second Circuit has described the five-step process with which the Commissioner determines whether a claimant is disabled and entitled to benefits:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform

---

**5.** "Medium" work is defined as "involv[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 467.967(c).

substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999) (footnote and citation omitted).

In the present case, the ALJ found that plaintiff was not engaged in substantial gainful activity, and had not been since August 1995 (T. 16). The ALJ next found, based on the medical evidence in the record, that plaintiff's impairments—scoliosis, fibromyalgia, and headaches—were severe (T. 16). The impairments noted, however, were not listed in 20 C.F.R. pt. 404, subpt. P, app. 1 and did not equal any of the listed impairments (T. 16). At the fourth step, the ALJ concluded that plaintiff had the residual functional capacity to perform work-related activities involving lifting up to twenty pounds occasionally and ten pounds frequently, as well as sitting, walking, or standing for up to six hours in an eight-hour day (T. 16). These limitations correspond to an exertional capacity of "light." *See* 20 C.F.R. § 416.967(b). Consequently, the ALJ held that plaintiff's experience as a "sewing machine operator/instructor," which falls into the "light" exertional category, *Dictionary of Occupational Titles,* Codes 787.132–010 and 787.682–066 (4th ed.1991), was past relevant work (sometimes "PRW") to which plaintiff could return (T. 16). The ALJ, therefore, found plaintiff not disabled within the meaning of the Act (T. 17).

## B. Standard of Review

The Commissioner's decision that plaintiff is ineligible to receive bene-fits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner. *Veino,* 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada,* 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley,* 748 F.2d at 112. In its review, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987).

## IV. Discussion

Plaintiff contends (1) that there was not substantial evidence in the record upon which to base the ALJ's determination that plaintiff had the residual functional

capacity to perform "light" work and (2) that the ALJ erred by including plaintiff's previous work in Cuba as a "sewing machine operator/instructor" as part of plaintiff's PRW. For the reasons set forth below, I agree with plaintiff. Rather than remanding solely for a calculation of benefits, however, I remand this matter for further administrative proceedings.

### A. Substantial Evidence

■ In making his determination that plaintiff could perform the full range of light work, the ALJ placed "great weight" on the opinion of examining DDS physician, Dr. Raghavan (T. 15). The doctor performed an examination of plaintiff in October 1996 and concluded that plaintiff was "probably only suited for a sedentary light job" (T. 106). This statement presents several problems.

First, it is unclear exactly what the term "sedentary light job" actually means; it is certainly not among the categories contained in the regulations. See 20 C.F.R. § 416.967. If the adjective "sedentary" modifies the adjective "light," then the complete term is equivalent to the phrase: "less than the full range of light work." However, if "light" modifies "sedentary," the complete term would be equivalent to the phrase: "less than the full range of sedentary work." In any event, the ALJ determined that plaintiff could do the full range of light work, which is certainly not the meaning of the statement upon which the ALJ placed "great weight" (T. 15). Second, Dr. Raghavan's opinion was not without qualification. He opined that plaintiff was *probably* only suited for a sedentary light job" (T. 106) (emphasis added). If the ALJ is to take Dr. Raghavan's opinion over that of her treating physician, one would desire a less equivocal statement on which to base the decision.

Finally, Dr. Ragahvan's report does not contain findings or opinions that entirely substantiate the ALJ's disability determination. The doctor noted that plaintiff "walk[ed] rather slowly," had "4 +/5 power on the right hand grip" and "5/5" on the left hand grip, and that "[m]uscle power [was] 4/5 in all muscle groups" (T. 106). While relevant, this information does not provide a complete picture of the main factors in a disability determination: plaintiff's ability to walk, stand, sit, push, and pull, as well as to perform other nonexertional abilities. Adding to the inadequacy of Dr. Raghavan's examination is that it was performed in October 1996, nearly two years before plaintiff's administrative hearing and, more significantly, one month before plaintiff's treating physicians began to diagnose plaintiff's fibromyalgia (T. 131). Dr. Raghavan's opinion, therefore, did not take into account one of the impairments from which the ALJ found plaintiff to suffer (T. 16). Given these circumstances, the opinion is inadequate to support any disability determination. See 20 C.F.R. § 416.912(d)-(e).

Plaintiff contends that the ALJ should have given more weight to her treating physician, Dr. Jones, who wrote on March 10, 1998, that plaintiff's pain "may likely inhibit her from any meaningful employment at this time" (T. 130). This statement, however, suffers from many of the same faults as does Dr. Raghavan's. First, the statement is far from unequivocal. Second, it is likewise unsupported by medical findings regarding plaintiff's exertional and nonexertional capacities. Indeed, the very same letter states that Dr. Jones was unable complete the residual functional capacity form the ALJ sent him (which would have provided such findings) because plaintiff failed to appear at her scheduled appointment.

The ALJ further found that plaintiff's testimony regarding her subjective complaints of pain not to be credible (T. 13–15, 16). This finding is explained by at least five separate reasons, including, *inter alia*, alleged contradictory testimony by plaintiff, personal observations of plaintiff at her administrative hearing by the ALJ, supposed lies about plaintiff's work history, and plaintiff's implausible claim that she cannot speak any English at all. Despite the extensive explanation offered by the ALJ, his assessment of plaintiff's credibility is not supported by substantial evidence. The ALJ mischaracterizes plaintiff's testimony and much of the evidence cited is irrelevant or unsubstantiated. The consequence of this error is amplified where, as here, plaintiff is found to have fibromyalgia, an ailment which has been recognized as difficult to diagnose with tangible clinical evidence. *See Green–Younger v. Barnhart*, 335 F.3d 99, 107–09 (2d Cir.2003).

■ The ALJ suggests that plaintiff testified to walking door-to-door distributing religious literature and only when it was pointed out to her that such activity was inconsistent with her complaints of pain did plaintiff "amend[ ] her testimony" to say that she sometimes sat in the van (T. 14–15). As the transcript of the hearing reveals, however, that was not plaintiff's testimony. Plaintiff was forthright about her participation in religious activities, testifying without having anything "pointed out" to her that she "sometimes" gets out of the van and "sometimes" does not.[6] *See* T. 38. " '[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,' such as attending church . . . , 'it would be a shame to hold this endurance against [her] in

determining benefits unless [her] conduct truly showed that [she] is capable of working.' " *Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir.1998) (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989)). This is especially true here, where plaintiff has clearly demonstrated the exercise of her religion as an "important goal[ ]" by taking the extreme step of expatriating herself from her home country because of an inability to worship freely.

The ALJ also cites plaintiff's testimony about her past work in discrediting her accounts of pain. First, the ALJ found that plaintiff lied about not ever working while she was in Cuba. Second, he asserts that plaintiff's claims that her ailments began in Cuba belie any assertion that plaintiff cannot perform gainful activity because she worked while in Cuba. These reasons, however, are predicated on the premise that plaintiff actually performed gainful activity in Cuba. As the next section makes clear, it is not certain that this was the case.

■ In the end, this Court is left with only two sustainable reasons for discrediting plaintiff's testimony: plaintiff's claim that she understands no English and the personal observations of the ALJ at plaintiff's administrative hearing. The first such reason has nothing to do with plaintiff's physical abilities, thus making it irrelevant to the ALJ's credibility decision. *See, e.g.*, § 416.912(a)(3), 416.929(c)(3) (discussing the evaluation of statements *about a claimant's pain and impairments* in disability determinations). This leaves only the ALJ's personal observations to support the finding regarding plaintiff's subjective complaints of pain. While personal observations may be factored into

---

**6.** This is not to mention the ALJ's mischaracterizations of plaintiff's statements regarding the amount of household chores her husband performs. *Compare* T. 14 (ALJ's characterization of plaintiff's testimony), *with* T. 35–37, 41–42 (plaintiff's actual testimony).

the ALJ's credibility assessment, *see* 20 C.F.R. § 416.929(c)(3), "such observations should be assigned only 'limited weight.'" *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir.1998) (quoting *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 643 (2d Cir.1983)).

■ Although the ALJ "has exercised his discretion and evaluated plaintiff's credibility," and "the Court may not examine the evidence and substitute its views for those of the Commissioner," *Crowley v. Barnhart*, 220 F.Supp.2d 176, 181 (W.D.N.Y.2002) (citing 42 U.S.C. § 405(g) and *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980)), the ALJ must still base his decision on substantial evidence, *see* 42 U.S.C. § 405(g). Personal observations, which are to only be given "limited weight," *a fortiori*, cannot alone constitute substantial evidence in support of the ALJ's decision.

Because the ALJ based his disability determination on a confusing and incomplete opinion from an examining physician, did not follow that opinion although purporting to afford it "great weight," and discredited plaintiff's testimony regarding her pain with irrelevant, mischaracterized, and insubstantial evidence, the ALJ's decision that plaintiff can perform the full range of light work is not supported by substantial evidence and must be reversed.

### B. Past Relevant Work

■ Even if plaintiff could perform light work, she further argues that the ALJ committed legal error warranting reversal by including her experience as a "sewing machine operator/instructor" in her PRW (T. 16). While the Court cannot agree in toto with plaintiff's assertion, the record is paltry on this issue and requires substantial development.

■ On her initial application, plaintiff listed no work history (T. 76, 80–85). At plaintiff's hearing, the following exchange took place between the ALJ and plaintiff (through an interpreter):

Q Now, is it your testimony that you never did any work at all of any kind in Cuba?

A I never, well, when I was about, before the revolution, I was still a little girl, I did help my dad.

Q How old were you when you got married?

A 20 years old.

Q Did you ever have to work in fields or factories or do any public work?

A Well, when I was in prison, I worked three months.

Q When were you in prison?

A The 20th of November of 1975 through August 15th of 1976.

Q Is that the only time you did any work?

A With the Government yes.

Q Did you have a medical excuse not to work?

A My bone doctor felt that I couldn't work, but in Cuba there is [sic] no individual jobs, it's state jobs. So—

Q So everybody has to work for the state?

A Yes, in Cuba I was a sewing professor, of clothing.

Q Tell me about that, how long were you a sewing professor?

A In my house—that would depend on how much clothing people came to get done, because that hardly happens in Cuba, and to work in something else, even cleaning floors, one would have to be a member of the—

(T. 43). This constituted the extent of the information the ALJ had before him when

he listed in his "FINDINGS" that plaintiff's PRW included experience as a "sewing machine operator/instructor" (T. 16). When the plaintiff took her case to the Appeals Council, she provided an affidavit which clarified matters only slightly. Plaintiff affied:

5. Around 1985, I was worked [sic] as a sewing machine operator in my home. I worked alone.

6. This job was assigned to me by the government.

7. I earned 140 pesos a month in 1985, which equaled $1.00 in U.S. currency.

8. I never earned more than $500.00 a month.

(T. 203). The ALJ—and thus this Court—knows no more about plaintiff's alleged past relevant work than what is set forth here.[7] With only these few available facts, any determination that plaintiff's previous job is appropriate PRW within the meaning of the Act is dubious.

■ For prior employment to be considered PRW, three criteria must be met. First, the job must have been done within the last fifteen years. Second, the job must have lasted long enough for the claimant to have learned it. And third, the job must qualify as substantial gainful activity. 20 C.F.R. § 416.965(a); Social Security Ruling 82–62, 1982 WL 31386, *1–2 (S.S.A.); see also Melville, 198 F.3d at 52–53 (discussing the definition of PRW in-depth). Here, the last two criteria are at issue.[8]

The record contains no information as to how long plaintiff's worked as a "sewing machine operator/instructor." The ALJ made an attempt to ascertain this information at plaintiff's administrative hearing, but plaintiff gave a nonresponsive answer. See T. 43. Likewise, plaintiff's affidavit simply says that she worked at the job "[a]round 1985 . . ." (T. 203). Thus, there is no factual basis upon which to conclude that plaintiff's alleged PRW lasted long enough for plaintiff to learn. Indeed, there is no indication of how long plaintiff performed the work at all.

Regarding the classification of a job as "substantial gainful activity," the regulations do provide guidance. Factors for the Commissioner to consider include the nature of the work, how well the claimant performed the work, if the work was performed under special conditions, if the work constituted self-employment, and the time spent doing the work. 20 C.F.R. § 416.973. A certain earnings level, however, can be indicative of whether a particular job constituted substantial gainful activity. The regulations provide earnings schedules which state that earnings above $300.00 a month in the 1980s will "ordinarily" show that the work was substantial gainful activity. 20 C.F.R. § 416.974(b)(2), Table 1. Conversely, earnings below $190.00 a month in the 1980s "ordinarily" demonstrate that the job performed was not substantial gainful activity. 20 C.F.R. § 416.974(b)(3), Table 2. Also relevant to this case is the regulations' caveat that so-called "make work"[9] is not to be consid-

---

7. The information in plaintiff's affidavit to the Appeals Council about her supposed past relevant work was not before the ALJ. Still, this Court should consider these facts when reviewing the Commissioner's final decision. Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996).

8. Plaintiff's affidavit stated that she worked at this job "[a]round 1985 . . ." (T. 203), which falls with the relevant time period.

9. "Make-work" is defined as "work devised chiefly to provide for the employment of labor." Webster's Third New International Dictionary, Unabridged 1364 (1981). "Make-

ered substantial gainful activity. *Melville,* 198 F.3d at 53 (discussing 20 C.F.R. § 416.973(b), which says in relevant part: "If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer . . ., this does not show that you are working at the substantial gainful activity level.").

 Plaintiff contends that because her job as a "sewing machine operator" paid only 140 pesos per month, equivalent to $1.00 (U.S.) in 1985 [10], her work experience does not, as a matter of law, constitute substantial gainful activity.[11] Plaintiff cites the earnings schedules in the regulations to support this proposition. If the Court were to strictly apply the earnings schedules, plaintiff's prior earnings and work would not appear to constitute substantial gainful activity.

Neither the Commissioner nor the Court, however, should slavishly follow the schedules. The regulations' use of the words "ordinarily show" when speaking of the earnings amounts in the schedules suggests that there may be circumstances in which such an indiscriminate adherence to the amounts contained therein is not proper. *See DeRienzis v. Heckler,* 748 F.2d 352, 354 (2d Cir.1984). Additional support

for this proposition is the regulations' mention of other factors to consider when deciding if a job constitutes substantial gainful activity. *See Melville,* 198 F.3d at 54 ("[A] proper assessment of whether past work was substantial gainful activity requires evaluation of, *inter alia,* [the factors listed *ante* ]."). Considering plaintiff's earnings alone, would render the other factors listed in the regulations meaningless. Thus, even though the earnings amounts listed in the regulations would ordinarily indicate that plaintiff was not engaged in substantial gainful activity, other factors must be considered as well.

In addition, for purposes of determining if a former job constituted substantial gainful activity, one cannot simply convert foreign earnings into United States dollars and apply the schedules; the context of the economy for which the schedules were derived must also be taken into account. Many factors, including the United States' per capita income and poverty levels at the relevant dates, were likely considered when the Commissioner crafted the schedules. No such consideration has been given to the Cuban economy. *See Azami v. Apfel,* 24 F.Supp.2d 1007, 1012–13 n. 13 (C.D.Cal.1998) ("Unfortunately, it does not appear that the Commissioner has publish-

---

work" (if not colloquial itself) is also colloquially referred to as "busy work."

**10.** The Court takes judicial notice that the Cuban peso is, at least officially, at parity with the United States dollar. Despite plaintiff's affidavit, a letter from plaintiff's representative to the Appeals Council appears to recognize this fact, saying that plaintiff's income in 1985 was, in fact, $140.00 (U.S.) (T. 200). Because of the unique economic circumstances in Cuba, however, in actuality it takes many more Cuban pesos (but not 140) to buy one United States dollar. *See* United States Department of State, Background Note: Cuba, (Sept.2002), *available at* http://www.state.gov/r/pa/ei/bgn/2886.htm (last visited Aug. 6, 2003). For purposes of this deci-

sion, the apparent confusion is irrelevant; even if the exchange rate is 1:1, the amount plaintiff claims she earned would not meet the lower threshold set by the regulations. The proper resolution of this issue, however, may have relevance on remand.

**11.** It should be noted that it is correct to consider foreign earnings when determining whether a job constitutes substantial gainful activity and PRW. *See Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989); Social Security Ruling SR 82–40, 1982 WL 313882, *2 (S.S.A.). *But see Kolman v. Sullivan,* 925 F.2d 212, 214 (7th Cir.1991) (criticizing, but not disagreeing with, the relevant holding in *Quang Van Han* ).

ed a schedule of comparable earnings for foreign countries."). This predicament is made more complex by the fact that Cuba is a communist state where earnings and currency may not have the same meaning and function as they do in the United States.

The instant case is quite similar to *Azami v. Apfel.* 24 F.Supp.2d 1007 (C.D.Cal. 1998). In that case, Azami, an immigrant from Afghanistan, appealed the ALJ's denial of social security benefits. The ALJ, as here, had ruled that Azami could return to his PRW as a general office clerk, which he performed in Afghanistan. Azami's ground for appeal was that his job paid only 2100 Afghani per month—the equivalent of $40.00 (U.S.)—and that, like here, the earnings schedule in the regulations indicated that the job did not constitute substantial gainful activity. The court in that case ruled that "[e]arnings are a presumptive, but not conclusive, indicator of substantial gainful activity," and that if Azami's assertion that the schedules should be strictly applied were correct, "very little employment in third-world countries could be considered past relevant work." *Id.* at 1012. The court then proceeded to detail how Azami's earnings at his job compared to the per capita income in Afghanistan at that time, demonstrating that it would be absurd to directly apply the schedules in the regulations to evaluate Azami's converted earnings. *Id.* at 1012 n. 13. This Court finds the reasoning in *Azami* thoroughly sound and does not, therefore, find persuasive plaintiff's argument to strictly apply the earnings schedules contained in the regulations.

▬ Simply because the Court will not hold as a matter of law that plaintiff's experience is not substantial gainful activity, however, does not necessitate the inverse conclusion. The Commissioner has an affirmative duty to develop the record to the point where an informed decision

can be reached. 20 C.F.R. § 416.912(d); *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The court in *Azami* upheld the ALJ's decision to disapprove benefits only because the ALJ had, in fact, considered the other relevant factors in deciding whether Azami's job was substantial gainful activity. *See Azami,* 24 F.Supp.2d at 1012 (stating that the other factors, in fact, "were explored in the [administrative] hearing.").

In the present case, there is not enough information in the record to make a determination regarding plaintiff's alleged PRW. The inadequacy of the record for that purpose, if not self-evident, is made explicitly clear by one of the ALJ's attempts to label plaintiff's PRW: "a sewing machine operator and or [sic] supervisor or instructor" (T. 16). It seems clear that the ALJ could not decide exactly what plaintiff's job entailed. This is not to mention that to even get as far as he did in labeling plaintiff's PRW, the ALJ must have made significant assumptions to take the (implausible) translation of plaintiff's testimony that she was a "sewing professor, of clothing," (T. 43), and, based upon only that testimony, find that she was "a sewing machine operator and or [sic] supervisor or instructor." Furthermore, even assuming, *arguendo,* that this work is correctly labeled, it is not entirely clear from the record that the job was not make-work for a disfavored citizen in an oppressive regime or that it even lasted long enough for plaintiff to learn.

Since the record is too incomplete and vague to determine (1) if plaintiff's experience as a "sewing machine operator/instructor" constituted substantial gainful activity and (2) if the work lasted long enough for plaintiff to learn, the ALJ could not possibly have made a determination as to whether plaintiff's job should properly be considered PRW. The Court also finds that the ALJ's determination that plaintiff

has the residual functional capacity to perform light work is not supported by substantial evidence. Given these holdings, the Court remands this matter for further proceedings, but not for a calculation of benefits; there is not but one possible conclusion which would result in the awarding of benefits. *Johnson,* 817 F.2d at 986. The Court does regret the unfortunate delay inherent with its decision to remand this matter, but until the record is clarified in a thorough manner and a decision is that is supported by substantial evidence is rendered on a complete record, no final decision can be made concerning plaintiff's entitlement to benefits.

### V. Conclusion

For the reasons set forth herein, plaintiff's motion (Dkt.# 11) is granted in part and denied in part.[12] The Commissioner's motion (Dkt.# 7) is denied, the Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

---

**12.** The Court declines to direct that the remand necessarily be referred to a different ALJ.